ODOM, Justice.
 

 The defendant was convicted of the crime of involuntary homicide, as defined by Act 64 of 1930, and sentenced to serve nine months in the parish jail. He appealed.
 

 Section 1, Act 64 of 1930, reads as
 
 fol-1
 
 lows:
 

 “Be it enacted by the Legislature of Louisiana, That any person who, by, operation or use of any vehicle in a grossly negligent or grossly reckless manner, but not wilfully or wantonly, causes the death of another person, shall be guilty of the crime of involuntary homicide, and upon conviction shall be punished by imprisonment for a term not exceeding five years, with or without hard labor, at the discretion of the Court.”
 

 By Section 3 of the act it is provided that the “law of manslaughter” shall not be repealed by this act, and that the district 'attorney may, in his discretion, “charge persons who cause death by the grossly negligent use of any vehicle under the existing manslaughter laws, and the crime of involuntary homicide shall be deemed to be included within every charge of manslaughter, and shall be a responsible [responsive] verdict under the said charge of manslaughter, and if the person so charged be found not guilty of manslaughter a verdict of involuntary homicide may be rendered by the jury”.
 

 This means that the district attorney, in his discretion, may charge a person who, by the use of a'vehicle, causes the death of another with the crime of manslaughter, and that the crime of involuntary homicide is included in such charge. State v. Flattmann, 172 La. 620, 135 So. 3.
 

 The bill of information filed against the defendant charges that he “wilfully, maliciously, feloniously and unlawfully did then and there, by the operation and use of a motor vehicle, to-wit: an automobile, in a grossly negligent and grossly reck
 
 *310
 
 less manner, but not wilfully or wantonly, feloniously cause the death of one Robert McCrory”.
 

 The record shows that the defendant was tried and convicted by a jury of five. Counsel for defendant filed in this court an assignment of errors (Article 560 of the Code of Criminal Procedure), which recites that defendant “was charged with manslaughter” and was “tried by a jury of five”, and that “The charge being one of manslaughter, he should have been tried by a jury of twelve”.
 

 If the defendant had been charged with the crime of manslaughter, the punishment for which is necessarily imprisonment at hard labor, he should have been tried by a jury of 12, and, therefore, the record, which shows that he was tried by a jury of five, discloses a patent error. State v. Porter, 176 La. 673, 146 So. 465.
 

 But the defendant was not charged with the crime of manslaughter. The accusation made against him follows the language of the statute. He was accused of causing the death of one McCrory by the operation or use of a motor vehicle “in a grossly negligent and grossly reckless manner, but not wilfully or wantpnly”. He was therefore charged with the crime of involuntary homicide, as defined by the statute. The bill of information shows this on its face.
 

 The district attorney wrote into the bill immediately preceding the statutory'charge of the crime of involuntary homicide the words “wilfully, maliciously, feloniously and unlawfully” and the word “feloniously” preceding the last clause of the charge. Because these words are written into the' bill, it is argued by counsel for defendant that the crime charged is that of manslaughter and not that of involuntary homicide.
 

 But these words are pure surplusage and should be regarded as such. Article 240 of the Code of Criminal Procedure reads as follows:
 

 “No indictment is invalid by reason of any repugnant allegations contained therein, provided that an'offense is charged. All unnecessary allegations shall be rejected as surplusage.”
 

 The bill of information in this case does charge an offense, the offense being that of involuntary homicide, as defined by the statute.
 

 In State v. Hudgens, 189 La. 128, 179 So. 57, the defendant was charged with the crime of involuntary homicide, under Act 64 of 1930. In that case, there were written into the bill the words “unlawfully, wilfully and feloniously”, and there, as here, it was contended that the bill was fatally defective for that reason. We held that the words “unlawfully, wilfully
 
 and
 
 feloniously” were unnecessary for the proper accusation of the crime of involuntary homicide “and consequently must be rejected as surplusage” (citing Article 240 of the Code of Criminal Procedure).
 

 Before going to trial, defendant through counsel filed a motion to quash the bill of information on the ground that it disclosed “no crime and no offense as defined by any statute of the State of Louisia
 
 *312
 
 na”, and, in the alternative, defendant alleged that the bill of information was “too vague and indefinite to admit of proof or to permit defendant to know what issues he would be called upon to meet”.
 

 The motion to quash was overruled, and properly so. The charge made against the defendant is couched in the language of the statute, which is- sufficient, the crime charged being statutory. State v. Newton, 166 La. 297, 117 So. 231; State v. Goldstein, 187 La. 353, 174 So. 873; State v. Dark, 195 La. 139, 196 So. 47.
 

 Counsel for defendant argued orally before this court and stated in his brief that the statute itself is defective because it fails to define the crime of involuntary homicide.
 

 The argument is without merit. The act does define the crime. It sets out specifically and in detail every element, every ingredient of the crime of involuntary homicide. It says that any person who causes the death of another by the use of any vehicle in a grossly negligent or grossly reckless manner, but not wilfully or wantonly, shall be guilty of the crime of involuntary homicide. It was not necessary for the act to define or state the meaning of “gross negligence” or “gross recklessness”. These terms have well understood meanings. It is the duty of the judge to explain the meaning of such terms to the jury, and presumably he did so in this case.
 

 As to defendant’s complaint that the bill of information is too vague and indefinite to admit of proof or to permit defendant to know what issues he would be ■called upon to meet, it suffices to say that the bill of information specifically charged that defendant had caused the death of one McCrory “by the operation and use of a motor vehicle, to-wit: an automobile, in a grossly negligent and grossly reckless manner, but not wilfully or wantonly”.
 

 The charge made against the defendant,, as set forth in the bill of information, is. not vague and indefinite, but, on the contrary, is clear and specific. In order to. know what issues defendant was called upon to meet, all he had to do was to read the bill of information. The bill charged that he caused the death of one McCrory by the use of a motor vehicle in a grossly negligent and grossly reckless manner, but not wilfully or wantonly. If defendant had, in order to prepare his defense, needed or desired additional information as to the details connected with the killing of the deceased, he should have, prior to arraignment, requested the judge to order the district attorney to furnish a bill of particulars. Article 288 of the Code of Criminal' Procedure provides that the accused is not entitled to a bill of particulars as to the-subject matter charged in the indictment, “but the trial judge may, in his discretion, require the district attorney to file in the case such data as, in the opinion of the judge, may be sufficient”. The subject matter charged in the indictment was stated clearly and specifically. But, if defendant had needed more data or details in order to make his defense, his right and remedy are clearly prescribed by the Code. Having failed to avail himself of the remedy given him by the Code, he has no right to complain.
 

 
 *314
 
 Bill of Exception No. 1 was reserved to the overruling of defendant’s demurrer or motion to quash. There is no merit in this bill for the reasons already stated.
 

 In connection with this bill, counsel for defendant argues that the bill of information contains mere conclusions of the pleader and is inconsistent and contradictory in its terms, in that the defendant is charged with operating a motor vehicle in a grossly negligent and grossly reckless manner, but not wilfully or wantonly. It is argued that the allegation in the bill that the act was not done wilfully or wantonly is antagonistic to, and destructive of, the charge of gross negligence and gross recklessness. Specifically, counsel’s contention is that to charge that an act is done in a grossly negligent and grossly reckless manner is equivalent to charging that the act was done wilfully and wantonly, and that, since it is charged that the act was not done wilfully or wantonly, it follows necessarily that it was not done in a grossly negligent or grossly reckless manner.
 

 As to the argument that the bill of information sets forth nothing more than the conclusions of the pleader, it is sufficient to say that the bill is couched in the language of the statute.
 

 There is no merit in the suggestion that the allegations contained in the bill are inconsistent. As used in the statute, the words “wilfully” and “wantonly” are practically synonymous terms. As used in statutes denouncing crimes, the word “wilfully” means or implies a purpose or willingness to commit the act. It implies a criminal intent, a deliberate intention or set purpose to commit the act, or a deliberate intention or purpose to injure or to do wrong, an evil design or evil intent. See 68 C.J., pp. 290, 291, under the general heading “Willfully”. See, also “Wilfully” as defined in Webster’s New International Dictionary, and also in 45 Words & Phrases, Perm.Ed., p. 286.
 

 In State v. Brown, 41 La.Ann. 345, 6 So. 541, it was held by this court that the word “wanton” is “of greater significance than ‘willful,’ and includes it in its meaning.” Citing Wharton, par. 376, 6th Ed.; State v. Williams, 32 La.Ann. 335, 36 Am. Rep. 272.
 

 The word “wantonly”, when used in a statute denouncing a crime, has a well defined meaning. As held in the case of State v. Brown, supra, it is practically synonymous with the word “wilfully”. An act is said to be done “wantonly” when it is done in reckless disregard of probable consequences or the rights of others. It means that the act was done intentionally and without regard to consequences and under such circumstances as evince a wicked or mischievous intent. See 67 C.J., p. 323, under the heading “Wantonly”. See, also, “Wantonly”, 44 Words & Phrases, Perm.Ed., p. 602.
 

 On the contrary, “Negligence is negative in its nature, implying the omission of duty, and excludes the idea of willfulness.” Wharton says, “Negligence necessarily excludes a condition of mind which is capable either of designing an injury to another, or of agreeing that an injury should be received by another”. Negligence is the want of ordinary or reasonable
 
 *316
 
 care. It is the- want of that reasonable care which should be exercised by a person of ordinary prudence under all the circumstances in view of the probable danger of injury. “Negligence is the failure to observe, for the protection of another’s interests, such care, protection, and vigilance as the circumstances justly demand, and the want of which causes him injury”. It is the failure to observe the care and skill which the situation demands. See “Negligence”, 28 Words & Phrases, Perm.Ed., p. 334.
 

 “Accurately speaking, the terms ‘negligence’ and ‘willfulness’ are incompatible, and signify the opposites of each other, in that absence of intent is a distinguishing characteristic of negligence, whereas willfulness cannot exist without purpose or design, and a willful injury will not be inferred when the result may be reasonably attributed to negligence or inattention.” 45 C.J., p. 672.
 

 “Gross negligence is the want of even slight care and diligence.” It is the “want of that diligence which even careless men are accustomed to exercise”. See “Gross Negligence”, 18 Words & Phrases, Perm.Ed., p. 723.
 

 The word “reckless” has a wide range of meaning. The word is used in Act 64 of 1930 in connection with the word “negligent”, and, as there used, it means careless, heedless, inattentive, indifferent, neglectful. It implies carelessness, hcedlessness, indifference, inattention to duty, thoughtlessness, or want of care. See Webster’s New International Dictionary; 53 C.J., p. 549; 36 Words & Phrases, p. 489, under the general heading “Recklessness”.
 

 Clearly, the words “wilfully” and “wantonly” are not synonymous with the words “negligently” and “recklessly”, the former implying intention or deliberation and the latter mere carelessness or lack of due and reasonable care or disregard for the rights and safety of others. See 20 R. C.L., p. 20, under the general heading “Negligence”.
 

 Bill of Exception No. 2 was reserved to the ruling of the court permitting the State to prove by two witnesses that defendant’s car had only one headlight burning at the time the deceased was run over and killed. The testimony was objected to on the ground that the bill of information did not charge the defendant with operating an automobile improperly equipped as to headlights.
 

 There is no merit in the objection raised for the reason that it was not necessary for the bill to set out the particular kind or character of evidence on which the State would rely to show that the defendant was guilty of gross negligence in the operation of the vehicle. It is not suggested that the district attorney failed to comply with the requirements of Article 333 of the Code of Criminal Procedure, which requires that he make an opening statement, explaining the nature of the charge and the evidence by which he expects to establish it. Defendant did not file a motion or request for a bill of particulars. The testimony was not objected to on the ground that it was irrelevant or immaterial. In his per curiam to this bill, the trial judge said, “The
 
 *318
 
 evidence was admissible and was part of the evidence establishing the gross carelessness and recklessness of the defendant”. The ruling of the judge admitting the testimony was correct.
 

 The coroner of the parish was called as a witness on behalf of the State. He testified that about two hours after the accident he visited the scene and made an investigation. On cross-examination, counsel for defendant asked’ the coroner the following question: “Do you recall from your investigation that Mr. McCrory [the deceased] was traveling south in the middle of the road and that the people who were preceding him down the highway were somewhat in advance of him, did you learn how far in advance they were from him?” The district attorney objected to this testimony on the ground that it was hearsay, and the objection was sustained. Counsel for defendant then asked the coroner this question: “After the investigation you told this boy Richard or Rufus Vinzant it was an unavoidable accident?” This question was objected to by the district attorney, and the objection was sustained. Counsel for defendant excepted to the ruling of the court and reserved Bill of Exception No. 3.
 

 The ruling of the trial judge was correct. The first question called for hearsay evidence, and the second for an expression of the opinion of the coroner as to the guilt or innocence of the accused. The judge in his per curiam to this bill said: “The fact that the witness is the duly qualified coroner does not authorize an admission of hearsay testimony as to the facts of the case nor authorize an expression of opinion as to guilt or innocence of the accused”.
 

 Bill of Exception No. 4 raises a question similar to that raised by Bill No. 2. A witness called for the State was asked: “Did you see him [the accused] with any liquor on that occasion?” The bill recites that this testimony was objected to by counsel for defendant for the reason that “the bill of information in no wise charged defendant with possession of or drinking liquor, did in no wise charge or indicate that the alleged accident grew out of the use or possession of any liquor”.
 

 The testimony was not objected to on the ground that it was irrelevant, but objected to on the ground that the bill of information did not charge defendant with the possession or the drinking of liquor. The answer to the objection is that it was not necessary for the bill of information to contain any such recital. Our ruling on Bill of Exception No. 2 disposes of the objection raised by Bill No. 4.
 

 Bill of Exception No. 5 involves two points. The district attorney in his closing argument to the jury stated that the bill of information .filed against the accused was valid since it complied in all respects with the requirements of the statute, and mentioned the fact that it was drawn in accordance with a form prepared by the Attorney General.
 

 Counsel for defendant did not object to the remarks made by the district attorney at the time they were made, nor did he at that time ask that the judge instruct the
 
 *320
 
 jury to disregard them. But he did request the judge to embody in his general •charge to the jury an instruction that such remarks should be disregarded by them. The judge, however, refused so to charge the jury. His ruling was clearly correct.
 

 The second point raised by the bill relates to the refusal of the judge to ■charge the jury that “they were entitled to accept any fact alleged in the bill of information as evidence that might be favorable •or beneficial to the accused”.
 

 The judge stated in his per curiam that he refused to give this charge for the reason that “The allegations in an indictment prove nothing”. He says he charged the jury that the bill of information was a mere accusation and was not to be considered as evidence of any allegation contained therein. His ruling was correct. This bill, like the others, is without merit.
 

 Bill No. 6 was reserved to the overruling of defendant’s motion for a new trial. It is alleged in this motion that the verdict of the jury was contrary to the law and the evidence. This allegation presents nothing for review. The bill sets out also that the judge erred in his rulings on the points raised by the several bills of exception. In this respect it presents nothing new, and, since we have passed on those points already, no useful purpose would be served by referring to them again.
 

 The verdict and sentence are affirmed.
 

 FOURNET, J., dissents and hands down reasons.