ROGERS, Justice.
 

 The defendant, Romie Hall, was charged by bill of information with violating Article 32 of the Louisiana Criminal Code, it being alleged that he “did commit the crime of negligent homicide by killing one Mrs. Walter Carey.” Defendant waived his right to trial by jury and was tried and found guilty by the judge. Thereafter defendant filed a motion for a new trial which was overruled, and defendant was sentenced to imprisonment in the penitentiary for a term of three years.
 

 Article 32 of the Criminal Code, on which the prosecution is based, defines negligent homicide as the killing of a human being by criminal negligence. And Article 12 of the Criminal Code declares that “criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.”
 

 The record discloses that at about 11:15 o’clock on the night of August 22, 1944, Mrs. Walter Carey was struck and killed by an automobile owned and driven by the defendant. The homicide occurred at the intersection of Clark Street and Tulane Avenue in the City of New Orleans. Clark Street, which runs north and south, is of the average width of city streets. Tulane Avenue, which runs east and west, is composed of two wide lanes for vehicular traffic and a narrow neutral ground between these lanes. On the neutral ground are
 
 *953
 
 double street car tracks with a narrow ledge on each side of the tracks. When Mrs. Carey was struck by the defendant’s automobile, she had almost completed crossing the south side of Tulane Avenue at Clark Street, using the path intended for pedestrians, and was about to step upon the sidewalk towards which she was walking. She was either thrown or dragged by defendant’s automobile about 22 feet from where she was struck and her body fell partly on the sidewalk and partly on the roadway. •
 

 Defendant, in his motion for a new trial and in his bill of exception reserved to the overruling of the motion, complains that he was convicted without any evidence whatever of driving his automobile recklessly or that he was criminally negligent. The testimony heard on the trial of the case was reduced to writing and is attached to the bill of exception.
 

 On his appeal defendant insists his complaint, embodied in his motion for a new trial, that the evidence did not show he was criminally negligent is well founded and consequently his conviction and sentence should be annulled.
 

 The record shows that a number of witnesses, including the defendant himself, testified in the case. The trial judge heard these witnesses and was in a position to observe them and to determine the credibility of their testimony. In his per curiam to the bill of exception reserved by the defendant to the overruling of the motion for a new trial, the judge points out:
 

 “The homicide in this case was caused by the appellant’s gross negligence, and not by conscientious error of judgment. When the appellant struck the decedent he was not confronted by an emergency from which he had more than one avenue of safe escape, the choice of which depended upon a hurried exercise of judgment.
 

 “The appellant struck and killed the' decedent as a direct result of that degree of criminal 'negligence defined in Article 12 of the Louisiana Criminal Code. To state the matter briefly as a direct result of his gross negligence, which was proved beyond any reasonable doubt, and which consisted of his lack of prudence and cautiousness; his disregard for the safety of others; his want of attention, vigilance and care which should be exercised by persons operating automobiles, especially while crossing intersections in city streets which are frequently traversed by pedes- • trians.”
 

 Defendant’s complaint, as embodied in the bill of exception, is frankly an attempt on his part to have this Court pass upon the findings of fact by the trial judge on the question of defendant’s guilt or innocence. This Court is entirely without jurisdiction to do so. Constitution 1921, art. 7, sec. 10, par. 7. There are numerous cases in our jurisprudence predicated upon the provision of the Constitution of 1921 and similar provisions in preceding constitutions holding that this Court is confined to questions of law and can not review the facts in a case affecting the guilt or innocence of the accused as to which the jury or the judge, as the case may be, is the sole judge.
 

 In State v. Gremillion, 160 La. 121, 106 So. 716, this Court expressly held that
 
 *955
 
 •when a criminal case is tried by the judge without a jury, the judge's conclusions on questions of fact relating to the question of guilt or innocence of the accused are final. The Gremillion case, together with a number of other cases, were cited with approval by this Court in State v. Martinez, 201 La. 949, 10 So.2d 712. In that case the defendant was tried and convicted by the judge. By way of a motion for a new trial and a bill of exception taken to the overruling of the motion, the defendant complained that the conviction “was not supported by any legal evidence.” This Court held that the complaint was not well founded and affirmed the defendant’s conviction, reaffirming the principle of law that the Court has no jurisdiction to decide questions of fact on which defendant’s guilt depends, and that on those questions the decision of the trial judge on a motion for a new trial is final.- See also to the same effect the decision of this Court in the more recent case of Town of Sulphur v. Stanley, 207 La. 1075, 22 So.2d 655.
 

 Counsel for defendant refers to the case of State v. Vinzant, 200 La. 301, 7 So.2d 917, wherein the defendant was convicted of involuntary homicide as defined by Act 64 of 1930. In affirming the conviction this Court held that the words, “wilfully” and “wantonly”, while synonymous terms with reference to each other, were not synonymous terms with reference to the words, “negligently” and “recklessly”,' the former implying intention or deliberation and the latter implying mere carelessness or lack of due and reasonable care. The Court explained that the offense of involuntary homicide is a lesser offense than that of manslaughter; that the elements of involuntary homicide, as denounced by the statute, are “gross negligence” or “gross carelessness”, whereas if the acts are “wilful” and “wanton” the crime would be manslaughter or possibly murder.
 

 The definition of “criminal negligence” as contained in Article 12 of the Criminal Code, which governs this prosecution and which we have hereinabove quoted, is a simple statement of the generally accepted meaning of the term, as pointed out by Dale E. Bennett, Acting Dean and Assistant Professor of Law of Louisiana State University Law School, and one of the reporters of the Law Institute who did the preliminary drafting of the Criminal Code and the comments thereto, in his article, .“A Comparison with Prior Criminal Law,” published in 5 Louisiana Law Review at page 11: “The definition of ‘Criminal Negligence’ in Article 12 of the Criminal Code, as requiring ‘a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances’ is in accord with the usual conception of the term. It calls for substantially more than the ordinary lack of care which may be the basis of tort liability, and furnishes a more explicit statement of that lack of care which has been variously characterized in criminal statutes as ‘gross negligence’ and ‘recklessness’.”
 

 Since, as shown by his per curiam, the trial judge found the defendant killed Mrs. Carey as the direct result of that degree of negligence defined in Article 12 of the Louisiana Criminal Cbde, as criminal negligence, we find no authority in the decision
 
 *957
 
 in the case of State v. Vinzant for reversing his finding.
 

 Counsel for defendant cites the cases of State v. McDonnell, 208 La. 602, 23 So.2d 230, and State v. Davis, 208 La. 954, 23 So. 2d 801, as pointing out the distinction existing between the reversal of the verdict of a jury or the judgment of the 'court, where there is no evidence at all upon some essential element of the crime charged, and where there is some evidence to sustain the conviction. The cited cases have no bearing on the question involved in the present case where there was evidence offered by the State to substantiate and by the defendant to refute the charge set forth in the information and upon the consideration of which the judge reached the conclusion that the defendant was guilty of the offense as charged.
 

 For the reasons assigned, the conviction and sentence appealed from are affirmed.
 

 FOURNET, J., concurs in the decree.