TATE, Justice
(dissenting).
The defendant was here convicted of violating a municipal ordinance which forbids reviling the police. She cursed the police after they had arrested her son.
A majority of this court initially denied supervisory review, rejecting the contention that the ordinance was unconstitutional on its face. 257 La. 993, 244 So.2d 860 (1971). The dissent expressed the view that the ordinance “is clearly unconstitutionally vague, overbroad and is an unlawful restriction upon freedom of speeech”. 244 So.2d 860.
The United States Supreme Court then granted certiorari and reversed this court. Lewis v. City of New Orleans, 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (1972). The sole issue raised was that the ordinance is unconstitutional on its face. The high court remanded the case to us “for reconsideration in the light of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (1972)”. Despite this and the circumstance that the ordinance here in ques *830 tion is constitutionally deficient under the standard expressed by Gooding v. Wilson, the majority again affirms the conviction.
At issue here is the contention that an ordinance of the City of New Orleans violates the First Amendment (freedom of speech) protections of the United States Constitution. See also Louisiana Constitution of 1921, Article 1, Section 3.
The ordinance in question makes it "unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the City Police while in the actual performance of his duty”. Section 49-7, City of New Orleans (Adopted by Ordinance No. 828).
We should at this point note the following: Under the broad scope of the terms of the ordinance: The punishable speech includes (1) wantonly (recklessly) used “opprobrious”[1] language “with reference to” an officer engaged in the performance^ of his duty, (2) which languagee need not be used in the presence of the officer[2], (3) nor be of a nature tending to cause an. immediate public disturbance nor used in such circumstances as likely to cause such a disturbance. Further, the punishable language need not interfere with the officer in the performance of his duty; it is sufficient only that the words be opprobrious with reference to the officer.[3]
Thus, for instance, a person sitting on a balcony overlooking the efforts of a policeman to direct traffic in the crowded French Quarter could, under the terms of the ordinance, be prosecuted for muttering, "Look at that stupid cop messing things up down there”. The epithet may be used wantonly, in that it recklessly and willfully reviles the heroic efforts of the police officer. The language is punishable under the terms of the ordinance, even though the muttered opprobrious comment was over *832 Reard only by a bystander — witness up on the balcony with the “reviler”, and though the policeman and no one else heard the mutter, and though the muttered criticism did not at all interfere with the unaware policeman’s conduct of his duties.
We should at this point note as unquestioned the basic American philosophy that freedom of speech protects us against criminal prosecution for criticizing or even using abusive or opprobrious language with regard to our public officials and our government. As noted in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 (1972), to which we were referred by the United States Supreme Court when it reversed our prior affirmance of this same conviction, even harsh insulting words cannot be punished except such as by their very utterance “tend to incite an immediate breach of the peace”. 92 S.Ct. 1107.
In Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 (1972), the United States Supreme Court held to be unconstitutional a Georgia statute punishing “any person who shall, without provocation, use to or of another, and in his presence . . . [4] oppropbrious words or abusive language, tending to cause a breach of the peace . ”, 92 S.Ct. 1104. (Italics mine.) Since the Georgia statute (like the present ordinance) punished only spoken words, the Supreme Court noted that “It can therefore withstand appellee’s attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments”. 92 S.Ct. 1105.
The court pointed out that “the transcendent value to all society of constitutionally protected expression is deemed to justify allowing ‘attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.’” 92 S.Ct. 1105. The court explained : “This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.” 92 S.Ct. 1105.
The Georgia statute was invalid because it was not “narrowly drawn to apply only to a constitutionally unprotected class of words — -‘fighting’ words — ‘those which by their very utterance inflict injury or tend to incite an immediate breach of the *834 peace’”. . 92 S.Ct. 1106. The court specifically -pointed out that an enactment which permits criminal punishment of the use of “opprobrious” language overbroadly includes within its prohibition merely derogatory comments, not necessarily “fighting words”. 92 S.Ct. 1107.
No authoritative Louisiana interpretation narrows the scope of this ordinance to include language tending to incite an immediate breach of the peace, “fighting words”. In fact, quite the contrary is so. See footnote 2 and the majority opinion. The majority here holds that it may be made a criminal breach of the peace “wantonly” -to use epithets or personal abuse with regard to a police officer while in the performance of his duty — indeed, this may be so, by a statute limited in application to those situations where the language creates the danger of an immediate public disturbance — , but it overlooks that the present statute, under its terms, punishes not only words used in such context, but also non face-to-face or peaceful or even private expressions of opprobrious comments. The mother is punishable under the ordinance for using the disrespectful language in her own living room as well as in the street.
The circumstance that, under the ordinance, such epithets must be used “wantonly” — that is, recklessly, willfully, see State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942), 44A Words and Phrases, “Wanton” — does not so narrow the language criminally punishable as to save this enactment from overbroadness. That the opprobrious language must be used “wantonly”. — recklessly, willfully — does not deprive it of constitutional protection, where not uttered under circumstances likely to cause an immediate public disturbance. As a matter of'fact, as interpreted by our state courts, the simple “cursing or using obscene language to any member of the New Orleans Police Department” has been regarded as wanton reviling which is punishable under the ordinance. See Footnote 2.
The ruling in Gooding v. Wilson is decisive of this case, as the United States Supreme Court indicated by ordering us to consider the present conviction in the light of that decision.
The language there used by the defendant to a Georgia police officer was “White S-- of a b----, I’ll kill you” and “You s-of a b----, I’ll choke you to death”. See 92 S.Ct. 1112. In the present case, the mother called the police officer a “G-d— m----f-----” police. The fact that the latter words used are shocking to the sensibilities of people of our generation does not by itself justify classifying such critical language as not protected by the constitution. See Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).
Whatever our personal views are as to what sort of language should or should not be punishable, this court is bound by our *836 state and federal constitutions to enforce constitutional protection of individuals and their speech as interpreted by authoritative decisions of the nation’s high court. That court has reversed us in the present case for not applying such principles announced by it. It has directed us to reconsider the present conviction in the light of Gooding v. Wilson. Gooding plainly indicates that the present ordinance is unconstitutionally overbroad on its face, just as was the quite similar Georgia statute in that case, in that it subjects to punishment constitutionally protected language as well as language not so protected.
The police, our front line soldiers in the battle against crime, deserve the respect and support of our officials and citizens. Nevertheless, ever since this nation fought for and obtained its freedom, it has not been a crime to curse or use opprobrious language about the public officers of our democratic republic. If, for instance, the present ordinance had made it a crime wantonly to curse or revile members of the United States Supreme Court of of the state judiciary (or the Governor, or the legislators or any other public officer or servant), as well as the police, I am certain that not one of the majority would deem such an enactment constitutional. The right to criticize our public officers, be they judges or policemen, has, since our earliest days, been deemed a basic right of all Americans. The harshness or unfairness of language used in such critical commentary does not remove it from the protection of our constitution. Freedom of speech is protected not only for our newspapers and politicians, but also for our citizens on back streets of slum areas.
Although it is immaterial to the issue before us (since the enactment is invalid on its face), I must emphasize once again that the sole action of the defendant hereby punished was her use of obscene language toward the policemen after they had arrested her son. She is not being prosecuted for public obscenity. There is no suggestion in the limited record in this court that such language had any tendency to cause a fight or public disturbance or to interfere with the police in the performance of their duties.[5]
To repeat, the United States Supreme Court has reversed this court’s prior rejection of the attack on the ordinance for being overbroad in scope and violative of the First Amendment.[6] It is not our function *838 to refuse to apply the direct ruling of the nation’s high court because we disagree with it. Orderly processes of adjudication and the rule of law suffer when an inferior tribunal refuses to follow the law as enunciated by a higher court.
I therefore respectfully dissent.

. As tlie United States Supreme Court noted in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 at 1107, under its definition “opprobrious” includes greater reach than “fighting words”. (This was one reason the Georgia statute was declared unconstitutional.) The Court noted that Webster’s New International Dictionary (1961) defines “opprobrious” as “conveying or intended to convey disgrace”.

. See Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942), saving from invalidity a statute since it did “no more than prohibit the face-to-face words plainly7 likely to cause a breach of the peace”. (Italics mine.)

.As the majority notes (see its footnote 2), the Criminal District Court for the Parish of Orleans, with primary responsibility to review convictions under this ordinance, held that the statute is not vague or overbroad since it “defines in detail what shall constitute reviling the police”, for by said ordinance the defendant was “prohibited from cursing or using obscene language to any member of the New Orleans Police Department.” Under this meaning, the statute clearly offends the United States Constitution, see Gooding v. Wilson, cited above.

. Note that the Georgia statute here invalidated contains, unlike the municipal ordinance in question, the limitation that the offending language' be used in the presence of the reviled person. All the more reason that the present municipal ordinance is unconstitutional. See Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766 (1942).

. It is to be noted that other statutes are available to punish conduct which actually hampers law enforcement. See, e. g., La.R.S. 14:108 (resisting an officer), La.R.S. 14:111 (assisting an escape) , and La.R.S. 40:1390 (interference with state police officers in the performance of their duties.)

. On October 24, 1972, -- U.S. --, 93 S.Ct. 279, 34 L.Ed.2d 214, the United States Supreme Court again reversed a majority of this court’s similar holding in City of New Orleans v. Martin, 260 La. 691, 257 So.2d 152 (1972) that the ordinance was constitutional.