479 So.2d 563 (1985)
James J. BAILEY, III, et al.
v.
FRANKS PETROLEUM, INC. and Scurlock Oil Company.
No. 84 CA 0962.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*564 John E. Coleman, Jr., John B. Noland, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiffs.
Patrick S. Ottinger, Lafayette, Herschel M. Downs, Shreveport, for Franks Petroleum.
James P. Bodenheimer, Bodenheimer, Jones, Klotz & Simmons, Shreveport, for Scurlock Oil.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
This suit involves an action for nonpayment of royalties due. The trial court made the following findings of fact which we adopt:
In 1970, Franks Petroleum Company (Franks) and plaintiffs entered into negotiations for the lease of certain property owned by petitioners. In April, 1970, Jack C. Caldwell, attorney for the plaintiff at the time, proposed the use of a lease form prepared by his law firm. This lease was eventually executed by the parties on May 22, 1970. The plaintiffs ancestors in title, Fidelity National Bank of Baton Rouge (F.N.B.) as trustee for the Fairfax Foster Bailey Trust and the Willie P. Foster Trust, and Mrs. Willie Palfrey Foster as Usufructuary executed the lease in question which the plaintiff[s] now seek to enforce. The petitioners are the proper parties to enforce the rights of the lessors under the lease as beneficiaries of the trust and/or the naked owners of the property, subject to Mrs. Willie P. Foster's usufruct. The trusts have terminated and the corpus of the trusts have devolved to the beneficiaries. The usufruct has also terminated and full ownership has been vested in the previous naked owners.
On November 3, 1972, Franks sent a division order to Fidelity National Bank as trustee for the trust. This division *565 order contained an incorrect allocation of royalty interest, i.e. all royalty interest was allocated to the Fairfax Foster Bailey Trust. On November 6, 1972, Franks notified the Fidelity National Bank that condensate production had commenced on the subject property. Franks thereafter entered into an agreement with Scurlock Oil Company whereby Scurlock would purchase the condensate production and assume Franks' obligation to pay petitioners their royalty interest under the lease between Franks Petroleum Company and the plaintiffs. Scurlock also agreed to pay Franks Petroleum its working share interest in the condensate purchased.
In February, 1973, Scurlock sent a division order to F.N.B. as trustee. The division order was in error and perpetuated the 20 percent attribution to the Fairfax Foster Trust as the original Franks' division order had done. Fidelity National Bank never executed this division order. On March 21, 1973, a transfer order correctly reflecting the interest of the respective trusts and the usufructuary was sent to Fidelity National Bank by Franks Petroleum Company. Scurlock Oil Company never relayed a similar transfer order to Fidelity National Bank.
In the latter months of 1980, James J. Bailey, III, the Bailey family business representative, had an accounting firm conduct an audit which revealed the fact that State records showed condensate production from W.P. Foster No. 2 Well, but no family records could reveal receipt of royalty checks. Mr. Bailey thereafter wrote a letter to Mr. Miles Byrd of Franks Petroleum, Inc. regarding condensate production at W.P. Foster Well No. 2, which in part stated:
["]State production reports indicate condensate production and disposition. What company is or should be remitting the royalty checks for this product?["]
This letter is included in the record. On January 28, 1981, Franks wrote a letter to Mr. Bailey saying that Mr. Franks received his payment from Scurlock Oil Company in Houston and that Franks Petroleum, Inc. did not disburse on the condensate from this well. On February 4, 1981, Mr. John E. Coleman, Jr., attorney for petitioners, sent a formal letter of demand to Franks Petroleum, Inc. notifying them that no royalty payments for condensate were made to the mineral lessors.
Mr. Coleman stated that the notice was specifically sent pursuant to Louisiana Revised Statute 31:137. Mr. Carl Corley, president of Franks Petroleum, Inc., wrote Mr. Coleman on the following day, saying that he had contacted Scurlock Oil Company and that a check covering all royalty payments due would be paid the next day, February 6, 1981. Mr. Corley stated that Franks Petroleum was not aware that these payments were not being made. On February 6, 1981, a check in the amount of $53,249.69 was mailed to Fidelity National Bank as trustee for the Fairfax Foster Trust, covering all amounts due for royalty payments to date.

TRIAL COURT
Suit was filed for alleged additional royalties due, interest, attorney fees and cancellation of the lease. The trial court found that placement of the condensate into nonsegregated tanks did not constitute payment and the royalty payments were not made when due. In addition, the trial court found that Franks was first given notice of nonpayment of the royalties in compliance with La.R.S. 31:137 by letter dated February 4, 1981. Payment of royalties was made within thirty days of notice, therefore, plaintiffs remedies were governed by La.R.S. 31:139. Judgment was rendered in favor of plaintiffs and against Franks for $106,499.38 for royalties due leaving a credit for the $53,249.69 paid, and for $15,000 in attorney fees. Franks as third party plaintiff, was granted the same judgment against Scurlock, as third party defendant. Franks and Scurlock appealed and plaintiffs answered the appeal.

*566 NONPAYMENT OF ROYALTIES
In the first, second and third assignments of error appellants allege that the trial court erred in finding that royalties had not been paid to plaintiffs pursuant to the lease. Franks argues that pursuant to the lease, royalties were payable either in kind or in payments based on a price which was to be determined by given formula. By placing all of the condensate into storage tanks owned by lessee, Franks argues that payment was made in kind in compliance with the lease.
The mineral lease reads in pertinent part:
Subject to the provisions of Paragraphs 2 and 11 hereof, royalties to be paid by Lessee are:
(a) One-fifth (1/5) of all oil, distillate, condensate and other liquid hydrocarbons howsoever produced and saved from the leased premises to be delivered to Lessor in storage tanks furnished by Lessee at its cost, or any pipe line in the field free of all cost or charge, or, at Lessor's option, purchased by Lessee at the price prevailing for the field on the day it is run to the pipe line or storage tank, or if there be no posted price for the field, the average price for Gulf Coast Fields of Louisiana for oil, distillate, condensate or other liquid hydrocarbons of same grade and gravity, without any deduction for treatment or transportation costs. All oil and condensate shall be measured in tanks, and liquid meters shall not be used without Lessor's consent.
Where a lease is silent on a particular issue, and the surrounding circumstances are ambiguous with respect to that issue, this ambiguity should be interpreted in favor of the lessee. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La. 1979). "The contract between parties is the law between them and the Courts are obligated to give legal effect to such contracts according to the true intent of the parties." Rebstock v. Birthright Oil & Gas Co., 406 So.2d 636, 640 (La.App. 1st Cir.1981), writ denied, 407 So.2d 742 (La. 1981).
Obviously the parties intended that royalty payments of some type were to be made. We are in agreement with the trial court that the lessors intended to take possession or delivery of one-fifth of the condensate when placed by lessee in segregated tanks. Lessors would thus have the opportunity to see to the sale of the condensate themselves. It is inconceivable that either party to the mineral lease intended that the lessee would retain possession of lessors' one-fifth of the condensate for an unlimited time with lessors receiving no benefits whatsoever from this arrangement. The only other method by which Franks could satisfy the royalty obligation would be by paying lessors the price to be determined by the formula provided in the lease. Payment was not made until February 6, 1981. Accordingly, we find no error in the trial court's holding that Franks failed to pay the royalties when due as provided in the lease.

DAMAGES UNDER LA.R.S. 31:139
The trial court found that Franks was not relieved of liability to plaintiffs by the sale of condensate production to Scurlock because plaintiffs did not sign the division order sent by Scurlock. In addition, it was found that the nonpayment of royalties for such a prolonged period of time constituted gross negligence which was tantamount to willful failure to pay royalties. Such willful failure to pay royalties was without reasonable grounds. Therefore, in accordance with La.R.S. 31:139[1] plaintiffs were *567 awarded double the royalties due ($106,499.38 subject to a $53,249.69 credit for royalties already paid), interest from the date due and reasonable attorney's fees of $15,000.
Franks alleges that the nonpayment of the royalties due was mere negligence. It was not willful and without reasonable grounds, therefore, the damages under La. R.S. 31:139 should be limited to interest on the royalties computed from the date due and reasonable attorney's fees.
A willful act is generally one in which the actor intended the end result. Peacock's Inc. v. South Central Bell, 455 So.2d 694 (La.App. 2d Cir.1984). The Louisiana Supreme Court in State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942) stated that "willfullness" and "negligence" are incompatible and are direct opposites of each other. "Negligence" is characterized by the absence of intent, whereas, "willfullness" is characterized by purpose or design. "Clearly, the words `willfully' and `wantonly' are not synonymous with the words `negligently' and `recklessly', the former implying intention or deliberation and the latter mere carelessness or lack of due and reasonable care or disregard for the rights and safety of others." Vinzant, 7 So.2d at 922.
In light of the judicial interpretations of willful and negligent conduct we hold that the nonpayment of royalties was due to negligence. The evidence does not support the trial court's finding of willful nonpayment. In accordance with this finding, under La.R.S. 31:139 the damages are reduced to interest on royalties from the date due and $15,000 for reasonable attorney's fees.

THIRD PARTY DEMAND
Franks filed a third party demand against Scurlock seeking indemnity. The trial court found that Scurlock had assumed Franks' obligation to make royalty payments to "party or parties entitled thereto" as evidenced by division order number 18873, dated February 7, 1973. Scurlock breached that obligation and as a result of Scurlock's fault, Franks was liable to plaintiffs. Judgment was rendered in favor of Franks and against third party defendant, Scurlock.
"It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." Bewley Furniture Co., Inc. v. Maryland Casualty Co., 285 So.2d 216, 219 (La. 1973). The principle of indemnity is generally based on La.C.C. art. 2315 and unjust enrichment. It is applied where contractual obligations are assumed and breached by the party assuming the obligations of the contract, and there is no fault on the part of the party whose obligations are assumed. Bewley Furniture Co., 285 So.2d at 219.
The trial court found and the record supports that Scurlock assumed Franks' obligations, negligently failed to pay royalties and thereby rendered Franks liable on the lease. As a result Franks is entitled to recover from Scurlock the sum for which Franks is liable to plaintiffs. We find no error in this holding.
We have reversed that portion of the trial court judgment which held that the nonpayment of royalties was willful and without good cause. We order the damages reduced to interest on royalties from the date due and affirm the $15,000 award of attorney's fees. We hold that Scurlock is liable to Franks for a like amount.

NOTICE OF NONPAYMENT
Plaintiffs answered this appeal assigning as error failure of the trial court to cancel the lease. A mineral lessor must give the mineral lessee written notice of the lessee's failure to make timely or proper royalty payments before making judicial demand for damages or dissolution of the lease. La.R.S. 31:137. The lessee must pay the royalties due within thirty days of receipt of notice of nonpayment. The payment or *568 nonpayment of the royalties due in response to La.R.S. 31:137 notice is governed by La.R.S. 31:139. La.R.S. 31:138. If payment is not made within thirty days of La.R.S. 31:137 notice, dissolution of the lease is an available remedy. La.R.S. 31:140.
Plaintiffs contend that the trial court erred by failing to find that the letter dated January 5, 1981, directed to Franks constituted notice in compliance with La.R.S. 31:137. They argue that payment was made on February 6, 1981, therefore, dissolution of the lease is an available remedy.
The letter dated January 5, 1981, reads in pertinent part:
Would you please provide me in writing the information necessary to answer the questions below. These questions were raised during a review of royalty and state production records on the two wells indicated.
. . . . .
State production reports indicate condensate production and disposition. What company is or should be remitting the royalty checks for this produce?
We find no error in the holding of the trial court that the letter of January 5, 1981, did not give Franks notice that the royalties for condensate production had not been paid. There is no question that the letter of February 4, 1981, did constitute proper notice under La.R.S. 31:137. This assignment of error is without merit.
The judgment of the trial court is amended and as amended affirmed. All costs are assessed to Scurlock.
AMENDED AND AFFIRMED.
NOTES
[1] La.R.S. 31:139 reads:

If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.