PITCHER, Judge.
Third-party plaintiff, McDermott, Inc. (McDermott), appeals from a summary judgment in favor of third-party defendant, Robert Murray Collins, as the representative of various maritime employers liability insurers (MEL Underwriters). The trial court held that McDermott, as an alternate employer, was an assured for all purposes and was excluded from coverage under certain policies of excess maritime employers liability (MEL) insurance issued by MEL Underwriters for claims asserted against McDermott by the plaintiff in the main demand. We affirm.

FACTS

This matter arose out of a maritime accident in which plaintiff, Anthony P. Lander-man (Landerman), was allegedly injured while working as a crew member aboard Derrick Barge No. 16, a vessel owned by McDermott. Landerman was a payroll employee of Liberty Services, Inc. (Liberty) and McDermott was his supervising employer. Liberty was an oil field service company which provided workers to work aboard McDermott’s barges pursuant to the terms of a Blanket Subcontractor’s Agreement with McDermott.
The Blanket Subcontractor’s Agreement contained reciprocal indemnity provisions requiring McDermott and Liberty to assume all risks of liability in connection with injury of their own employees and to defend and indemnify each other for claims brought by their respective employees. This contract also required Liberty to maintain a workers’ compensation and employers’ liability insurance (WCEL) policy with an alternate employer endorsement in favor of McDermott.
After Landerman’s accident, Liberty provided maintenance and cure. When Liberty refused to pay medical costs and periodically terminated maintenance payments, Lander-man filed suit in state court on February 9, 1990 against both Liberty and McDermott, alleging that the proximate cause of his injuries was the negligence of the defendants and the unseaworthiness of Derrick Barge No. 16. Landerman further alleged that he was a seaman during his employment with the defendants.
IsOn the date of the accident, Liberty was insured by a primary WCEL policy with a maritime endorsement. Also, two policies issued by MEL Underwriters provided Liberty with EMEL insurance. The EMEL policies, subject to certain stated conditions, followed the same warranties, terms and conditions of Liberty’s primary WCEL policy.[1] By endorsement, McDermott was insured as an alternate employer under the WCEL and EMEL policies. In addition to WCEL and EMEL coverage, Liberty also had in force a comprehensive general liability policy (CGL) *811 which provided contractual liability coverage; and by blanket endorsement, McDermott was named as an additional assured under this policy.
Landerman settled his suit against Liberty on the main demand, leaving McDermott as the only defendant.[2] McDermott called upon Liberty for defense and indemnification pursuant to the terms of the Blanket Subcontractor’s Agreement. Liberty, in turn, called upon its CGL insurers to assume this contractual obligation. The CGL insurers accepted Liberty’s contractual obligation and filed on McDermott’s behalf a claim for defense and indemnity from Liberty’s EMEL insurers, MEL Underwriters. The CGL insurers claimed that the EMEL policies provided coverage to McDermott as an alternate employer for claims asserted by Landerman. MEL Underwriters denied the claim, and McDermott responded by filing this third-party demand against MEL Underwriters. MEL Underwriters filed a motion for summary judgment.
In written reasons for judgment, the trial court found McDermott, as Landerman’s alternate employer, to be an assured for all purposes under the EMEL policies and therefore excluded from coverage by the EMEL policies’ watercraft exclusion and by the protection and indemnity (P & I) exclusion found in the primary WCEL policy. Summary judgment was granted in favor of MEL Underwriters, and McDermott’s third-party demand was dismissed with prejudice. McDermott appealed and urged in its sole assignment of error that 4the trial court erred in ruling that the EMEL policies issued to Liberty excluded coverage of McDer-mott for claims asserted by Landerman.

ASSIGNMENT OF ERROR

McDermott contends that the term “assured” was not defined in the EMEL policies and that the trial court erred in finding that the term included alternate employers and applying the watercraft exclusion to McDer-mott, the owner of the vessel on which Lan-derman was injured. McDermott argues that it is only an alternate employer and not a named assured or additional assured.
McDermott further contends that the trial court erred in finding that the P & I exclusion applied to McDermott. McDermott argues that even though it was covered by a P & I or similar policy, the exclusion was not applicable in this case because the alternate employer endorsement states that MEL Underwriters “will not ask any other insurer of the alternate employer to share with us the loss covered by this endorsement.”
Thus, McDermott urges this court to find that the trial court erred in failing to find that the watercraft exclusion and the P & I exclusion ambiguous, in failing to interpret the EMEL policies liberally in favor of coverage, and in failing to strictly construe the exclusions against the insurers.
MEL Underwriters, on the other hand, submit that McDermott must be an alternate employer if McDermott was to be afforded any coverage under the EMEL policies; and if McDermott was an alternate employer, McDermott was an assured, and an assured was subject to the policies’ exclusions, including the watercraft exclusion and the P & I exclusion. We agree.

LAW AND DISCUSSION

Insurance policies are liberally construed in favor of coverage, and exceptions to coverage are strictly construed against the insurer. The insurer has the burden of proving that a policy exclusion precludes recovery. Capital Bank & Trust Company v. Equitable Life Assurance Society of the United States, 542 So.2d 494, 496 (La.1989).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity or doubt as to the meaning of a provision is construed in favor of the insured. Equivocal provisions seeking to narrow the insurer’s obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). See LSA-C.C. art. 2056.
*812 Louisiana courts, however, do not take it upon themselves to interpret contracts which are not ambiguous. Smith v. Mobil Corporation, 719 F.2d 1313, 1317 (5th Cir.1983). Absent ambiguity, the contract is to be read according to its plain intendment, and contractual obligations are to be enforced as written and given legal effect according to the true intent of the parties. See Bailey v. Franks Petroleum, Inc., 479 So.2d 563, 566 (La.App. 1st Cir.1985). Except for words of art and technical terms, the words of a contract must be given their generally prevailing understood meaning. LSA-C.C. art. 2047.
The Watercraft Exclusion
In the instant case, an endorsement to the EMEL policies, Endorsement No. 1, provided in pertinent part as follows:
It is hereby agreed and understood that the indemnity granted under this policy shall not apply:
1. To liability to Captain and Crew of, and employees on Assured’s owned and/or operated watercraft.
[[Image here]]
It is further agreed and understood that ALTERNATE EMPLOYER ENDORSEMENT (WC112) is hereby added to the policy.
The alternate employer endorsement provided in pertinent part:
This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer. ... Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.
It is undisputed that McDermott owned and operated Derrick | flBarge No. 16 and that McDermott was Landerman’s alternate employer at the time of the accident in question. It is also undisputed that the EMEL policies, including the watercraft exclusion set forth above, excluded from the indemnity granted under the policies liability to the captain, and crew of, and employees on, watercraft owned and/or operated by an assured.
Our examination of the record reveals that neither the WCEL nor the EMEL policies defined the terms “assured” or “alternate employer.” The trial court concluded, and we agree, that under the facts of this case, the term “assured” includes alternate employers.
McDermott was an alternate employer but, nonetheless, it contends that, even though it was entitled to coverage pursuant to the alternate employer endorsement to the EMEL policies because the watercraft exclusion does not apply in this case to exclude coverage to McDermott since the policies treated alternate employers and additional assureds differently.
In Pullen v. Employers’ Liability Assurance Corporation, 230 La. 867, 89 So.2d 373, 377 (1956), the Louisiana Supreme Court stated that “the test of identification for exclusion must be applied to each [assured] specifically and not to all [assureds] collectively.” The Court further stated:
[T]he true and proper use and meaning of the unqualified word “[assured]” is directly related to the particular clause in which it is incorporated, ... [T]hat it is not so much the word that gives meaning to the clause as it is the clause that gives meaning to the word, and that the word has a meaning only in the sense in which it is used in a particular clause.
Id. 89 So.2d at 376.
The exclusion at issue here is based on the identity (i.e., employment and relationship to the vessel) of the claimant (i.e., “liability to ... employees”) and the claimant’s relationship to the vessel (i.e., “on Assured’s owned and/or operated watercraft”).
We hold that when a MEL or an EMEL policy does not specifically restrict the term “assured” to the named assured and does not define the term “alternate employer,” the alternate bemployer is considered to be an assured. Thus, McDermott, by being designated as an alternate employer, is an assured and therefore excluded from coverage. If McDermott was not an assured, McDermott clearly had no claims against the EMEL policies. The language of the alternate em *813 ployer endorsement also supports finding that the EMEL policies do not treat the alternate employer and an assured or additional assured differently. The endorsement clearly states that: “Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.”
The P & I Exclusion
The record reveals that McDermott did not have a traditional P & I policy in effect, but it had a very similar policy for the benefit of the assured, such as Liberty. By endorsement, this policy provided McDer-mott with the same protection as a P & I policy. The endorsement provides as follows:
Such insurance as is extended hereunder shall with respect to any watercraft leased by the named insured, when the lease contract requires the named insured to secure hull and protection and indemnity, and/or other liability insurance, to include the owner of such watercraft as an additional insured.
The primary WCEL policy issued to Liberty specifically excluded coverage when a P & I or similar policy had been issued to the insured or for the insured’s benefit. Since the EMEL policies were subject to the same terms and conditions of the WCEL policy, coverage was likewise excluded under the EMEL policies when such a policy is in force. Due to the fact that McDermott had a policy that provided protection similar to that of a traditional P & I policy, we find that the P & I Exclusion is applicable.
As noted earlier in this opinion, McDermott contends that the P & I exclusion was inapplicable to McDermott because of a provision in the alternate employer endorsement which provided in pertinent part:
We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.
McDermott’s rebanee on the above provision is misplaced because that provision is clearly applicable only in the event of “a loss I Rcovered by [the] endorsement.” McDer-mott’s loss is not a loss covered by the endorsement. As previously determined, McDermott, as an alternate employer, is an assured. Therefore, the P & I provision applies to McDermott, and McDermott is excluded from coverage under Liberty’s EMEL policies.

THE APPROPRIATENESS OF SUMMARY JUDGMENT

The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
For the reasons stated above, this court finds that the indemnity granted under the EMEL policies in effect at the time of the accident in question excluded “liability to ... employees on Assured’s owned and/or operated watercraft.” We further find that the EMEL policies did not cover “bodily injury covered by a protection and indemnity policy or a similar policy” issued to an assured or for the assured’s benefit. On the date of the accident, McDermott was Landerman’s alternate employer; and under the facts of this case, McDermott was also an assured under the EMEL policies for all purposes. McDer-mott also had in effect a policy similar to a P & I policy. Therefore, the watercraft exclusion and the P & I exclusion excluded coverage of McDermott for claims asserted by the plaintiff, Landerman. When these exclusions are read according to their plain intendment, they are not ambiguous. Therefore, the contractual obligation will be enforced as written. Upon enforcement of the applicable policy exclusions, there are no genuine issues of material fact as to MEL Underwriters’ obligation to defend and indemnify McDer-mott. Accordingly, the trial court properly granted summary judgment in favor of MEL Underwriters, dismissing McDermott’s third-party claims against MEL Underwriters.

_]oPECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment *814 in favor of the third-party defendant, Robert Murray Collins, as representative of various maritime employers liability insurers, and dismissing the claims of third-party plaintiff, McDermott, Inc., is affirmed. McDermott, Inc., is assessed with all costs of these proceedings.
AFFIRMED.
PARRO, J., concurs.

. Except for premiums charged and limits of liability, these policies are identical.

. Landerman subsequently compromised his claims against McDermott.