THOMPSON, J.
 

 The defendant was tried for manslaughter and by a verdict of nine to three was convicted as charged. The judge refused a new trial and imposed a sentence of not less than one nor more than three years in the penitentiary.
 

 There are four bills of exception exclusive of the one reserved to the denial of a new trial, and, as they all relate to the same subject-matter, we shall consider them together.
 

 The defendant was driving his automobile in the nighttime on a highway without any lights. He crashed into an approaching horse-drawn vehicle commonly called a buggy. There were two people in the buggy, L. E. Pittman, who was driving, and his daughter Miss Hna Pittman.
 

 The .violent impact of the automobile caused the buggy to turn over. The young lady was thrown out and received a broken neck, from which she died shortly thereafter.
 

 The sole defense to the charge, as we understand from the record and from defendant’s brief, is that the operation of the automobile without lights was not such gross neg
 
 *864
 
 ligence as to make the killing a felonious homicide and that in no event,could defendant be held criminally liable, since the death was the result of a collision in which each driver was guilty of violating the law.
 

 The first bill was reserved to the refusal of the court to permit defendant to prove that the buggy had no lights and was therefore being driven in violation of the statute.
 

 The other three bills were reserved to the refusal of the judge to charge the jury as follows:
 

 (1) That it is unlawful for an automobile to operate upon the public roads without lights; and that it is also a violation of the law for a horse-drawn vehicle to operate upon any of the roads, etc., without a light in front that can be seen 500 feet away.
 

 ■ (2) That if you find that the failure to have lights on the buggy was the cause of the accident, or if you find that if the buggy had had lights on it the accident would not have occurred, you must acquit.
 

 (3) That gross negligence and recklessness should not be interpreted to mean something more, or a greater degree of negligence and recklessness, than the mere omission of duty, or a rashly negligent, careless, and heedless act.
 

 That the defendant was operating his car in violation of a criminal statute can hardly be doubted. Indeed, the whole theory of the defense involves the admission that the car had no lights.
 

 The first question' presented, therefore, is whether as a matter of law a killing resulting from such negligence can be said to be a felonious homicide.
 

 ■ There seems to be no conflict in the decisions of the courts of the various states that, 'where a person is violating some statute and his manner is negligent and careless, he is guilty of manslaughter,' if the death of some other person is the result. This is the rule in Nebraska, Indiana, Alabama, Connecticut, and Missouri, and perhaps other states.
 

 In Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 404, Ann. Cas. 1912C, 495, the Supreme Court of Nebraska held that one who, with reckless disregard for the safety of others, so negligently drives an automobile in a public street as to cause the death of another, is guilty of criminal homicide.
 

 In Archibald’s Criminal Pleading, Evidence and Practice (24th Ed.) p. 892, it is said that the doctrine is well established that an act or omission arising from culpable neglect of duty and having a fatal result is manslaughter.
 

 “And where a dangerous and unlawful act is done, even in sport, if death results it is manslaughter.”
 

 The same rule is stated in Ruling Case Law, vol. 13, p.' 85S, to the effect that every one who is so situated that his acts may endanger the life of another is bound to exercise caution, and failing to do so the law holds him responsible.
 

 The principles of negligent homicide, says the same author, apply to death caused in the use of the highways as well as to death resulting from other acts.
 

 “Accordingly, if a person driving or riding in the street or highway strikes and kills another person as a result of negligence or in-caution in his use of the way, he will be deemed guilty of manslaughter. The rule frequently has been held to be applicable to persons driving motor vehicles.”
 

 In volume 2, p. 1212, of the same work, it is stated that one who willfully or negligently drives an automobile on a public street at a prohibited rate of speed, or in a manner expressly forbidden by statute, and thereby
 
 *866
 
 causes the death of another may be guilty of homicide. See also note to a Connecticut ease, 30 L. R. A. (N. S.) 458.
 

 In Corpus Juris, vol. 29, p. 1155, it is declared that an unintentional hilling occasioned by the reckless and negligent driving of a motor vehicle may constitute involuntary manslaughter.
 

 Citations to the same effect might be multiplied, but it is unnecessary.
 

 We conclude, and we do not think the question open to controversy, that where a person operates his automobile at night upon the public highways or streets without lights in violation of a penal statute he is guilty of culpable and criminal negligence, and if another person is killed as the result of such culpable and criminal negligence the driver of the automobile will be guilty of manslaughter.
 

 The case of State v. Dean, 154 La. 671, 98 So. 82, has no possible application to the instant case. In that case the defendant was prosecuted under a statute which made it a penalty where a person through gross negligence and recklessness in operating a motor vehicle injured another person. The indictment omitted the word “gross,” and the court held that the word was sacramental, as it meant something more than a mere omission of duty.
 

 It is not necessary here to consider the distinction between gross negligence and negligence from mere omission of some duty. The statute imposes a penalty for operating an automobile at night without lights, and its violation amounts to something more than simple negligence arising from some act of mere omission of duty.
 

 The act of violation is within and of itself criminal and culpable negligence.
 

 Nor does the fact, if it were a fact, that the buggy had no lights, minimize the defendant’s negligence or excuse him from criminal responsibility.
 

 The primary cause of the collision and death was with the defendant, and he cannot be relieved by the contributory negligence, if there was such, on the part of the driver of the buggy.
 

 The deceased was the guest of her father in the buggy. She was not responsible for the neglect to equip the buggy with lights. Therefore she cannot in law be said to have contributed to the collision in which she lost her life.
 

 However, the rule is well settled that contributory negligence of the person killed does not constitute a defense to a prosecution for homicide.
 

 In Archibald’s Criminal Pleading, referred to supra, at page 893, it is said that it is no defense to an indictment for manslaughter, where the death of the deceased is shown to have been caused in part by the negligence of the prisoner, that the deceased was also' guilty of negligence, and so contributed to his own death.
 

 In R. C. Law, vol. 13, p. 859, it is said that while there is a conflict of opinion ás to whether the doctrine of contributory negligence applies to relieve from criminal responsibility for negligent homicide, according to the clear weight of authority, the rule of law concerning contributory negligence by the injured person as a defense in a civil action for damages for personal injuries is not applicable to a prosecution for manslaughter as the result of negligence.
 

 The same rule is announced in Corpus Juris, vol. 29, p. 1155.
 

 In State v. Campbell, 82 Conn. 671, 74 A. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236, the Supreme Court of Connecticut stated that the authorities were not in conflict and that the courts have uniformly held that a per
 
 *868
 
 son will not be excused for killing another, even though his victim was negligent.
 

 “While contributory negligence is a complete defense to an action for private injury resulting from homicide, it is no defense to a prosecution for a public wrong.”
 

 The jurors who heard the evidence (three dissenting) found the defendant guilty. The presiding judge, who likewise heard the evidence, affirmed the verdict.
 

 The court, having given due consideration to the case, can find no cause for reversing the ruling of the court made the subject of the four bills of exception.
 

 We deem it not out of place to say that while the automobile is a utility of convenience and necessity and is not within itself a dangerous agency, yet when such a high-powered machine is operated by an inexperienced, indifferent, reckless, and drunken person, upon the public thoroughfares, it becomes one of the greatest and most powerful menaces to human safety and life.
 

 We, as judges, cannot pretend ignorance of a fact that is common knowledge, and that is that for the first five months of this year in this city there was an average of one human life destroyed by motor vehicles every three days, and the daily press tells us that not a single conviction has been had.
 

 This court is not vested with jurisdiction of the facts on the question of guilt or innocence, but we deem it our duty to say that the persons who make use of such machines should be held to that degree of care necessary for the protection of the lives of all persons who have occasion to make use of the public highways and streets of the state.
 

 The statute which the defendant violated was designed in part to regulate the use of such machines and to insure the safety of those traveling on the public highways. It was a valid exercise of the police power of the state.
 

 The conviction and sentence are affirmed.
 

 O’NIELL, O. J., dissents.