Amos L. Ponder and Carroll Buck, both of Amite, for appellant.

Nicholls Pugh, of Springville, for appellee.

BRUNOT, Justice.

This is a suit for an absolute divorce and for the permanent custody and control of three minor children, issue of the marriage between the plaintiff and defendant. In the court below there was judgment for the plaintiff as prayed for in the petition, and the defendant appealed.

The recitals of the petition meet the requirements of the law and are in the form usually followed in divorce suits. The suit is based upon one specific act of adultery, which is alleged to have been committed by the defendant with C. J. Sellers, at Frost, La., on August 24, 1930. In her answer to the suit the defendant emphasizes her denial of the alleged act of adultery; avers that the plaintiff has thereby falsely and publicly defamed her; and, assuming the attitude of plaintiff in reconvention, she alleges that she is entitled to a judgment in her favor decreeing a separation "a mensa et thoro" between her and the plaintiff, and a rule upon him to show cause why he should not be condemned to pay alimony in the sum of $60 per month for the support of herself and her minor children during the pendency of the suit.

The regularity and legality of the proceedings prior to the rendition of the judgment appealed from are not questioned. Therefore, the sole issue presented to this court is one of fact.

The appellant has filed a motion in this court, with certain affidavits attached thereto, alleging newly discovered evidence, and asking, in the alternative, that the case be remanded for the hearing and taking of further evidence.

It will not be necessary to pass upon this motion, for the reason that plaintiff has not satisfactorily sustained the burden of proving his wife's infidelity, but circumstances are established which, in our opinion, show probable cause for the institution of the suit. Therefore, the proper judgment in this case is one of nonsuit as to the demands of both litigants. The testimony is in direct conflict on all of the important facts. A majority of the witnesses, including the wife of the alleged corespondent, testified for the defendant, but the proof as a whole does not, in its present state, warrant the rejection of the plaintiff's demands or the affirmance of the judgment appealed from.

A detailed recital of the testimony would support the correctness of our conclusions, but it would needlessly reflect upon the character of the litigants.

For the foregoing reasons, it is decreed that the judgment appealed from be and it is avoided and that the demands of both the plaintiff and defendant be dismissed as in case of nonsuit, at appellee's cost.

176 La. 673

## STATE v. PORTER.
### No. 32163.

Supreme Court of Louisiana.
Jan. 30, 1933.

Rehearing Denied Feb. 27, 1933.

Jack & Jack, of Shreveport, for appellant.

G. L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and James U. Galloway, Dist. Atty., of Shreveport (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

ODOM, Justice.

The grand jury returned an indictment against defendant charging that he "did, by the operation and use of a motor vehicle, to wit, a motor truck, in a grossly negligent and grossly reckless manner, cause the death of Marguerite Walton."

On being arraigned, the accused pleaded not guilty, waived trial by jury, and went to trial before the court. He was convicted as charged and sentenced to serve a term of not less than two nor more than three years at hard labor. From the conviction and sentence he prosecutes this appeal.

We find in the record four bills of exception, two of which were reserved to the refusal of the trial judge to deliver to himself certain special charges relating to the law applicable to the case, one to the overruling of a motion in arrest of judgment and one to the refusal of the trial judge to grant a new trial.

(1) The serious point involved is brought up by the motion in arrest of judgment which we shall dispose of first because a ruling on this point, adverse to plaintiff's contentions, practically disposes of the points raised by the other bills.

The motion in arrest of judgment sets out that the record discloses on its face a patent error of law in that it shows that defendant was tried before the court, without the intervention of a jury, on a charge necessarily punishable at hard labor, in contravention of § 41, art. 7, of the Constitution, which provides that all cases in which the punishment is necessarily at hard labor shall be tried by a jury of twelve, nine of whom must concur to render a verdict.

The very able and learned attorneys for defendant in their oral argument before the court and in their most excellent brief filed, strenuously argue that the charge made in the indictment is manslaughter, which crime, under § 786 of the Revised Statutes, is necessarily punishable by imprisonment at hard labor not exceeding twenty years.

If it be true, as counsel argue, that defendant was charged with the crime of manslaughter, it follows necessarily that the record, which shows that he was tried by the court without the intervention of a jury, discloses patent error. So the case hinges primarily, and we may say almost entirely, upon whether the indictment charges defendant with the crime of manslaughter. If so, he could not waive trial by jury. Article 342 of the Code of Criminal Procedure provides that, if the offense charged is capital or necessarily punishable with imprisonment at hard labor, "the defendant cannot waive trial by jury; in all other cases he may elect to be tried by the judge alone." This is but a restatement of the law which prevailed prior to the adoption of the Code. The Constitution itself provides in section 42 of art. 7 that the district judge shall have authority to try misdemeanors at any time and "when the jury is waived

by the defendant, all cases not capital or necessarily punishable at hard labor."

The record discloses that the jury was waived and the case tried by the judge alone on defendant's own motion. But even when an accused person voluntarily waives trial by jury, if the crime charged is one which, under the law, is necessarily punishable at hard labor, he is not bound by the waiver and may take advantage of the irregularity in a motion to arrest the judgment. This is for the reason that the law expressly prohibits one charged with a crime necessarily punishable with hard labor from waiving trial by jury and provides that such cases shall be tried by a jury. The organic law itself prescribes the forum or tribunal for the trial of such cases. The judge has no jurisdiction, no power to try one charged with a capital offense, or one necessarily punishable at hard labor and where he assumes jurisdiction in such cases and permits the trial to proceed before him, the trial is utterly void, being in contravention of a prohibitory law. Parties cannot by their conventions change the forum for the trial of their cases and thereby make valid that which is prohibited by express law. They may waive or renounce what the law has established in their favor, provided such waiver or renunciation is not expressly or impliedly prohibited by law or contrary to public policy. The law which provides that persons charged with capital offenses or those necessarily punishable by imprisonment at hard labor shall be tried by juries was made in the interest of both the accused parties and the state and neither is permitted to derogate from it. State v. Thompson, 104 La. 167, 28 So. 882; State v. Jackson, 106 La. 189, 30 So. 309.

(2) Coming now to the contention made by counsel for the defendant that as a matter of law the indictment on its face charges manslaughter, we must hold that it does not. It charges that defendant "Did, by the operation and use of a motor vehicle, to wit, a motor truck, in a grossly negligent or grossly reckless manner, cause the death of Marguerite Walton."

If this was intended to be an indictment for manslaughter, it is defective and void. Article 235 of the Code of Criminal Procedure, which is found in chapter 3 under the general heading "Of the Recitals Requisite in Indictments for Certain Crimes," provides that:

"The following forms of indictments *may* be used in the cases in which they are applicable, *but any other forms authorized by this or any other law* of this State may also be used." (Italics ours.)

The article then proceeds to specify the forms of indictment *which may be used* in charging certain crimes among them being manslaughter, the form for which is "A. B. killed C. D.".

In the case before us, if the indictment had recited that "Petrice Porter killed Marguerite Walton," the crime charged would have been manslaughter as that is the form permitted (but not required) by the Code. But the Code provides that any other form "authorized" by "any other law of this State" may also be used. The only other form of indictment for manslaughter "authorized" by the law of this state is that set out in § 1048 of the Revised Statutes, which is that "defendant did feloniously kill and slay the deceased." .

As these are the only forms authorized no other can be recognized and it therefore follows that an indictment not couched in either form is not an indictment for manslaughter.

(3) There is another reason why this indictment cannot be held to be one for manslaughter and that is that its very language shows that the crime intended to be charged is that of involuntary homicide as defined by Act No. 64 of 1930, p. 142. In making the charge the pleader copied the language of the statute and the rule is that, when a statute denounces a certain act as a crime or offense and describes the act, if such act is not a common-law crime, the offense is purely statutory and may be charged in the language of the statute. State v. Philbin, 38 La. Ann. 964; State v. Perkins, 43 La. Ann. 186, 8 So. 439; State v. Fricker, 45 La. Ann. 646, 12 So. 755.

Furthermore, counsel for defendant in their brief say that "the indictment, trial, conviction and sentence were based upon Act No. 64 of 1930." The question then arises whether a person may be prosecuted and convicted for manslaughter under that act. The answer is that he cannot and the reason is that the act, in specific terms, defines and denounces a separate and distinct crime, the crime of involuntary homicide, which is, in a sense, akin to manslaughter but which is not manslaughter in law. The Legislature has seen fit to create and define the crime of involuntary homicide and to fix the punishment therefor, and that crime is, by the act, put in a class by itself. While the crime of involuntary homicide as created by the statute includes one of the elements of manslaughter, that is, the killing of a human being, yet in law, it is a separate and distinct crime for the reason that the Legislature has made it so.

Act No. 64 of 1930 is an act "relative to the crime of involuntary homicide by the use of any vehicle in a grossly negligent or grossly reckless manner, defining said * * * offense; providing penalty for the same, and repealing all laws or parts of laws in conflict therewith, *except the existing manslaughter statute.*" (Italics are the writer's.)

Section 1 of the act provides "that any person who, by operation or use of any vehicle in a grossly negligent or grossly reck-

less manner, but not wilfully or wantonly, causes the death of another person, shall be guilty of the crime of involuntary homicide, and upon conviction shall be punished by imprisonment for a term not exceeding five years, with or without hard labor, at the discretion of the Court."

Since the adoption of this act we have a distinct crime, that of involuntary homicide, one which had not theretofore been defined or denounced. So that when it clearly appears, and as in this case when it is conceded, that an accused person is being prosecuted under this act, he knows that he is not being prosecuted for manslaughter.

It is argued by counsel for defendant that one who kills a human being by the grossly negligent or grossly reckless use of a vehicle may be guilty of manslaughter. That is unquestionably true and the act in specific terms so recognizes for in § 3 it is provided that the law against manslaughter is not repealed "and the District Attorney may, in his discretion, charge persons who cause death by the grossly negligent use of any vehicle under the existing manslaughter laws." Then follows the provision that "the *crime of involuntary homicide* shall be deemed to be *included* within every *charge of manslaughter*." (Italics are the writer's.) This shows unmistakably that the crime of involuntary homicide is separate and distinct from that of manslaughter.

The Legislative intent, which clearly appears, was to create a crime of lesser degree than manslaughter. This is shown, first, by the penalty prescribed, which is punishment by imprisonment not exceeding five years, either with or without hard labor; whereas the punishment for manslaughter is imprisonment at hard labor not exceeding twenty years; second, the act provides, in § 3, that the crime of involuntary homicide as created "shall be deemed to be included within every charge of manslaughter, and shall be a responsible [meaning responsive] verdict under the said charge of manslaughter, and if the person so charged [that is, with manslaughter] be found not guilty of manslaughter, a verdict of involuntary homicide may be rendered by the jury."

By this enactment, the greater crime of manslaughter includes the lesser crime of involuntary homicide created by the act. But the lesser crime of involuntary homicide does not and cannot include the greater crime of manslaughter. So that, if the district attorney intends to prosecute a person who kills another by the grossly negligent or reckless use of a vehicle, for manslaughter, he must necessarily charge that person with the crime of manslaughter, which as we have already said can be done only by using the form of indictment authorized by law. If the charge be manslaughter, a conviction for involuntary homicide may be had under the statute. But it is legally impossible to prosecute and convict for manslaughter where an indictment is brought under Act No. 64 of 1930.

(4) In State v. Flattmann, 172 La. 620, 135 So. 3, 4, we had occasion to discuss at length the provisions of Act No. 64 of 1930. In that case the accused was charged with manslaughter, the indictment setting out that he "did feloniously kill and slay" the deceased. He was convicted of involuntary homicide under this act. The contention there made was that said act is "violative of section 16 of article 3 of the Constitution 1921, requiring that 'every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.'" The argument was that there was nothing in the title of the act "indicative of the object of sections 3 and 5, *relating to the crime of manslaughter.*" (Italics are the writer's.)

Paragraph 1 of the syllabus to that case reads as follows:

"Title of involuntary homicide statute held sufficiently broad to cover manslaughter provision for killing one by grossly negligent use of vehicle."

The syllabus as worded may create the impression (and possibly with some show of reason) that we intended to hold that one prosecuted under the act might be convicted for manslaughter. We did not intend to so hold and the opinion clearly shows it. What we said was this:

"Our opinion is that the title of this act is broad enough to cover the provisions of sections 3 and 5, *to the effect* that a person who kills another by the grossly negligent use of a vehicle *may be prosecuted either for manslaughter or for involuntary homicide,* according to the judgment of the district attorney."

This holding is too clear to admit of mistake, but to be slightly more specific, what we held was that a person who kills another by the grossly negligent use of a vehicle may be prosecuted either for manslaughter under the existing manslaughter law or for involuntary homicide under Act No. 64 of 1930, according to the judgment of the district attorney.

(5) As we have already noted, the act provides "that any person who, by operation or use of any vehicle in a grossly negligent or grossly reckless manner, *but not wilfully or wantonly,* causes the death of another person, shall be guilty of the crime of involuntary homicide." The indictment in this case, while following the exact language of the statute in other respects, does not include the words "but not wilfully or wantonly," and for that reason it is argued that the charge is necessarily manslaughter.

The specific contention made and ably argued is that to charge one with the killing of another in a "grossly negligent or grossly

reckless manner," but without the qualifying clause "but not wilfully or wantonly" as used in the statute, is equivalent in law to a charge that the killing was done "wilfully and wantonly"; that the words "but not wilfully or wantonly" are "the distinguishing factor between the crime of manslaughter and the crime of involuntary homicide."

We might dispose of counsel's argument on this point by repeating what we have already said, and that is that the form of the indictment shows that it was not intended that the charge should be manslaughter. But counsel argue that it is either an indictment for manslaughter or nothing, and in this connection they urge the point that it does not charge the crime of involuntary homicide as defined by Act No. 64 of 1930 in that it does not negative the idea that the killing was done willfully and wantonly.

The crime of involuntary homicide as defined by the act is the causing of the death of another "by the operation or use of any vehicle in a grossly negligent or grossly reckless manner." The sole elements of the crime are that the death of another was caused by the grossly negligent or grossly reckless use of a vehicle. To make out its case, the state would have to prove that and nothing more. It would not be necessary to prove that the accused did not cause the death of the deceased willfully or wantonly, that is to prove a negative, and that which it is not necessary for the state to prove, it need not allege.

That in substance is what we held in State v. Ramey, 173 La. 478, 137 So. 859, where the accused was prosecuted for violating Act No. 169 of 1918. The defendant demurred on the ground that the affidavit did not set out that he was not the parent, tutor, guardian, or other person having the custody or control of the child, the act not applying to such persons. We held that "the exception does not enter into the description of the offense," and that, "if defendant considered * * * that he came within the exception, he should have availed himself of it by way of defense," citing Code of Criminal Procedure, art. 228 and 31 C. J. 720.

The clause "but not wilfully or wantonly" written into Act No. 64 of 1930 immediately following the definition of the crime, was intended merely as an exception, for most assuredly one who causes the death of another willfully and wantonly, as those words are used in criminal law, is guilty of manslaughter or worse. They constitute no element of the crime of involuntary homicide and need not be inserted in the indictment.

There is no error disclosed on the face of the proceedings and the motion in arrest of judgment was properly overruled.

■ (6) Defendant requested the court to deliver the following charge to itself: "To sustain a conviction, defendant must have been criminally negligent. Criminal negligence is defined to be a dereliction of duty under circumstances showing an actual intent to injure or such a conscious and intentional breach of duty as to warrant an implication that the injuries were intended."

The court refused to give this charge and a bill was reserved. The ruling of the court was correct. Intent is not a necessary ingredient of the crime of involuntary homicide as defined by Act No. 64 of 1930. That is shown by the use of the qualifying clause "not wilfully or wantonly," which immediately follows the definition of the crime.

The ruling in such cases as State v. Irvine, 126 La. 434, 52 So. 567, State v. Wilbanks, 168 La. 861, 123 So. 600, has no application here. These were manslaughter cases decided before the statute under consideration was adopted.

■ (7) We gather from the bills reserved and from the per curiam of the trial judge that the vehicle operated by the accused and the one which deceased was operating when killed, were approaching a street intersection from opposite directions and collided at the intersection when defendant attempted to make a left turn. It was contended by defendant that he extended his left hand to indicate to the deceased that he intended to make the turn and, having done so, he was not negligent. In his per curiam, the trial judge says that the testimony did not satisfy him that defendant held out his hand, but that if he did, it was not done until the other car had practically passed through the intersection and too late to give the driver of the other car an opportunity to check her speed or to avoid the collision. He further found that the defendant and a young girl who was riding on the seat with him "were so entwined" that the occupant of a car following immediately behind the truck operated by defendant "could not tell which one occupied the driver's seat." Section 4 of the act provides that in all prosecutions under the act or under the manslaughter law, the question whether defendant was guilty of gross negligence or gross recklessness "shall be a question of fact for the jury" (and of course for the judge where the case is tried before him).

We find no errors of law in the rulings made by the trial court.

In a motion for a new trial, defendant set up all the errors set out in his bills of exception. His motion was denied and he reserved a bill. For the reasons already stated, the ruling was correct.

The judgment is affirmed.