Felix Stroud **HAMMONTREE**, Petitioner-Appellee,

v.

C. Paul **PHELPS**, Director, Louisiana Department of Corrections, Respondent-Appellant.

No. 79–1307.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1979.

---

Barbara Rutledge, Asst. Atty. Gen., New Orleans, La., Leonard Knapp, Jr., Dist. Atty., 14th Judicial Dist., Lake Charles, La., for respondent-appellant.

D. Michael Mooney, Lake Charles, La., for petitioner-appellee.

Before WISDOM, HILL and VANCE, Circuit Judges.

WISDOM, Circuit Judge:

We skate on thin ice. This habeas case involves a statutory presumption in a criminal action, an interpretation of the statute by the Louisiana Supreme Court, and the propriety of the state trial court's instructions on the "presumption".[1] The ice was thinned by a recent major decision of the Supreme Court, *County Court of Ulster County v. Allen*, 1979, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777. In explication of the decision, the associate justices divided four-four. The Chief Justice concurred fully in the opinion for the Court but found on the facts that it was unnecessary to discuss the problems raised by the statutory presumption. *Sandstrom v. Montana*, 1979, —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39, thickened the ice.

Louisiana's negligent homicide statute provides that: "The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence." LSA–R.S. 14:32. In Hammontree's habeas corpus action the district court found that this provision violated due process because it created an unconstitutional presumption that violation of a statute constitutes criminal negligence. *Hammontree v. Phelps*, W.D.La.1978, 462 F.Supp. 366. The state appeals from the court's grant of habeas corpus and argues that the statute is not unconstitutional, or, in the alternative, that any constitutional violation constitutes harmless error.

On June 29, 1977, an automobile driven by Felix Hammontree, petitioner, struck a camper truck, causing fatal injuries to a child asleep inside. Hammontree was charged with negligent homicide under LSA–R.S. 14:32. After hearing evidence that the defendant was intoxicated and speeding at the time of the accident, the jury convicted him. The trial judge sentenced him to serve five years at hard labor. The Louisiana Supreme Court affirmed the conviction. *State v. Hammontree*, La.S.Ct. 1978, 363 So.2d 1364. He then filed this habeas corpus action. The federal district court granted the writ, vacated the judgment of conviction and sentence, and ordered him discharged unless the state appealed. 462 F.Supp. at 370.

## I

In 1969 the United States Supreme Court ruled that a criminal statutory presumption was unconstitutional "unless it can at least be said with substantial assurance that the

---

1. For a discussion of presumptions, see C. McCormick, *The Law of Evidence* §§ 342–46 (2d ed. 1972); J. Thayer, *Preliminary Treatise on Evidence at the Common Law* 313–52 (1898); 9 J. Wigmore, *Evidence* §§ 2490–540 (3d ed. 1940); Ashford & Risinger, *Presumptions, Assumptions and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L.J. 165 (1969); Bohlen, *The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof*, 68 U.Pa.L.Rev. 307 (1920); Brosman, *Statutory Presumptions* (pts. 1–2), 5 Tul.L.Rev. 17, 178 (1930); Jeffries & Stephan, *Defenses, Presumptions and Burden of Proof in the Criminal Law*, 88 Yale L.J. (1979); Morgan, *How to Approach Burden of Proof and Presumptions*, 25 Rocky Mt.L.Rev. 34 (1952); Morgan, *Further Observations on Presumptions*, 16 S.Cal.L. Rev. 245 (1943); Morgan, *Some Observations Concerning Presumptions*, 44 Harv.L.Rev. 906 (1931); Stumbo, *Presumptions—A View at Chaos*, 3 Washburn L.J. 182 (1964); Note, *Constitutionality of Rebuttable Statutory Presumptions*, 55 Colum.L.Rev. 527 (1955); Note, *The Validity of Criminal Presumptions in Louisiana*, 37 La.L.Rev. 1155 (1977); Note, *The Unconstitutionality of Criminal Statutory Presumptions*, 22 Stan.L.Rev. 341 (1970); Comment, *Presumptions in the Criminal Law of Louisiana*, 52 Tul.L.Rev. 793 (1978); Comment, *Statutory Criminal Presumptions: Reconciling the Practical With the Sacrosanct*, 18 U.C.L.A.L.Rev. 157 (1970); Comment, *The Constitutionality of Statutory Criminal Presumptions*, 34 U.Chi.L. Rev. 141 (1966).

presumed fact is *more likely than not* to flow from the proved fact on which it is made to depend". (Emphasis added.) *Leary v. United States*, 1969, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82. The Court refused to decide whether a presumption must satisfy the "beyond a reasonable doubt" standard in situations where "proof of the crime charged or an essential element thereof depends upon its use". 395 U.S. at 36 n.64, 89 S.Ct. at 1548 n.64; *accord, Barnes v. United States*, 1973, 412 U.S. 837, 842–43, 93 S.Ct. 2357, 2361–62, 37 L.Ed.2d 380, 386. The formulation of the standard in *Leary* was a restatement and refinement of the due process requirement as first articulated in *Tot v. United States*, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519, 1524: There must be at least "a rational connection between the facts proved and the fact presumed"—a connection grounded in "common experience".

This June the Court clarified its earlier decisions on presumptions and delineated when a presumption must indicate the ultimate fact beyond a reasonable doubt. *See Sandstrom v. Montana*, 1979, —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39; *County Court of Ulster County v. Allen*, 1979, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777.

■ The more detailed analysis is in *Ulster County*. The Supreme Court had before it a constitutional attack on a New York statute which provides that, with certain exceptions, the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons occupying the vehicle. A majority of the Court held that the judgment of the New York Court of Appeals for the defendant should be reversed. Justice Stevens, for the Court, held that the "permissive presumption, as used in this case, satisfied *Leary*'s ["more likely than not"] test".[2] Justice Stevens prefaced his discussion of presumptions by noting that the "ultimate test" of a statutory presumption or any other factfinding device used in a criminal trial is whether it "undermine[s] the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt". —— U.S. at ——, 99 S.Ct. at 2224, 60 L.Ed.2d at 791. The Court then divided statutory presumptions into permissive presumptions and mandatory presumptions, of which there are two subclasses.[3]

■ A permissive presumption "allows—but does not require—the trier of fact to

---

**2.** A permissive presumption need not meet the beyond a reasonable doubt standard because the prosecution could rely on all of the evidence presented to meet its burden of proving the issue:

> There is no more reason to require a permissive statutory presumption to meet a reasonable doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted. As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the test described in *Leary*.

—— U.S. at ——, 99 S.Ct. at 2229–30, 60 L.Ed.2d at 798. Of course, if a permissive presumption is the only evidence introduced on an element of the offense or on some other issue where the prosecution must satisfy the beyond a reasonable doubt standard, the basic fact must prove the ultimate fact beyond a reasonable doubt.

**3.** The opinion did not discuss conclusive presumptions. A conclusive presumption is irre-

buttable; "when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all". C. McCormick, The Law of Evidence § 342 at 804 (2d ed. 1972); *accord*, Note, *The Unconstitutionality of Statutory Criminal Presumptions*, 22 Stan.L.Rev. 341, 342 (1970).

*Sandstrom* did discuss conclusive presumptions. *See* —— U.S. at ——, 99 S.Ct. at 2455–2459, 61 L.Ed.2d at 46–51. It noted that on two previous occasions the Court had ruled certain conclusive presumptions unconstitutional. *See United States v. United States Gypsum*, 1978, 438 U.S. 422, 435, 446, 98 S.Ct. 2864, 2872, 2878, 57 L.Ed.2d 854, 868, 875; *Morissette v. United States*, 1952, 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–56, 96 L.Ed. 288, 306. The *Sandstrom* opinion held that "a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury". —— U.S. at ——, 99 S.Ct. at 2459, 61 L.Ed.2d at 50.

infer the elemental fact from proof by the prosecutor of the basic one and . . . places no burden of any kind on the defendant". *Id.* at ——, 99 S.Ct. at 2224, 60 L.Ed.2d at 792. The Court added:

> Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

*Id.*

 A mandatory presumption "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts". *Id.* at ——, 99 S.Ct. at 2224–25, 60 L.Ed.2d at 792. Weak mandatory presumptions "merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution". *Id.* at ——, 99 S.Ct. at 2225 n.16, 60 L.Ed.2d at 792 n.16. "To the extent that a presumption imposes an extremely low burden of production—e. g., being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference and it may be proper to analyze it as such." *Id.* A strong mandatory presumption "entirely shift[s] the burden of proof to the defendant. The mandatory presumptions examined by our cases have almost uniformly fit into the former subclass, in that they never totally removed the ultimate burden of proof beyond a reasonable doubt from the prosecu-

tion. E. g., *Tot v. United States*, supra, 319 U.S. at 469, 63 S.Ct. 1241, 87 L.Ed. 1519. See *Roviaro v. United States*, 353 U.S. 53, 63, 77 S.Ct. 623, 1 L.Ed.2d 639." *Id.*

 A mandatory presumption violates due process "unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt". *Id.*, —— U.S. at ——, 99 S.Ct. at 2229, 60 L.Ed.2d at 798. This standard is appropriate because the trier of fact must abide by the presumption and cannot make an independent evaluation of the evidence supporting the ultimate fact presumed; "the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases". *Id.* at ——, 99 S.Ct. at 2226, 60 L.Ed.2d at 793. Whether other evidence in the record supports the ultimate finding is irrelevant. *Id.*

Chief Justice Burger concurred "fully in the Court's opinion reversing the judgment under review," but concluded that "the jury could readily have reached the same result without benefit of the challenged statutory presumption". *Id.* at 798 (Burger, C.J., concuring).

Justice Powell, with whom Justices Brennan, Stewart, and Marshall joined, wrote a dissenting opinion: "[T]he presumption as charged to the jury in this case [fails to meet] the constitutional requirements of due process . . . . [A]n individual's mere presence in an automobile where there is a handgun does not even make it 'more likely than not' that the individual possesses the weapon".

Justice Powell viewed a statutory presumption as posing two constitutional problems: first, it could lessen the jury's burden to find the ultimate facts beyond a reasonable doubt, *id.* at ——, 99 S.Ct. at 2230, 60 L.Ed.2d at 799, (Powell, Jr., dissenting and second, it might violate "the due process rule that when the jury is encouraged to make factual inferences, those inferences must reflect some valid general observation

about the natural connection between events as they occur in our society". *Id.* at ——, 99 S.Ct. at 2231, 60 L.Ed.2d at 800. (Powell, Jr., dissenting). As established in *Tot*, there must be at least "a rational connection between the facts proved and the fact presumed"—a connection grounded in "common experience". Relying also on *Leary* and *Barnes*, Justice Powell summarized the three decisions:

> In sum, our decisions uniformly have recognized that due process requires more than merely that the prosecution be put to its proof. In addition, the Constitution restricts the court in its charge to the jury by requiring that, when particular factual inferences are recommended to the jury, those factual inferences be accurate reflections of what history, common sense, and experience tell us about the relations between events in our society. Generally this due process rule has been articulated as requiring that the truth of the inferred fact be more likely than not whenever the premise for the inference is true. Thus, to be constitutional a presumption must be at least more likely than not true.

*Id.* at 801–02 (Powell, J., dissenting).

Justice Powell suggested that the majority had not fully considered the due process standard. The majority did state, however, that if it is "clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need satisfy only the test described in *Leary*", i. e., that the presumption is valid only if it is more likely than not that the ultimate fact flows from the basic fact proven by the presumption. *Id.* at ——, 99 S.Ct. at 2230, 60 L.Ed.2d at 798.

Justice Powell saw two problems with the presumption considered in *Ulster County*. First, "[p]eople present in automobiles where there are weapons simply are not 'more likely than not' the possessors of those weapons". *Id.* at ——, 99 S.Ct. at 2233, 60 L.Ed.2d at 802. He thus disagreed

with the majority's determination that this presumption was more likely than not indicative of the ultimate fact. *See id.* at ——, 99 S.Ct. at 2230, 60 L.Ed.2d at 798. Second, "the presumption charged in this case encouraged the jury to draw a particular factual inference regardless of any other evidence presented". *Id.* (Powell, J., dissenting), The jury could disbelieve all of the other evidence presented by the prosecution but still reach a guilty verdict. *Id.* at ——, 99 S.Ct. at 2232–34, 60 L.Ed.2d at 802–04 (Powell, J., dissenting). Justice Powell suggested that the majority opinion "assumes away the inference altogether, constructing a rule that permits the use of any inference—no matter how irrational in itself—provided that otherwise there is sufficient evidence in the record to support a finding of guilty". *Id.* at ——, 99 S.Ct. at 2235, 60 L.Ed.2d at 804. But the majority's position seems to require that a permissive presumption meet a more likely than not standard. *Id.* at —— – ——, 99 S.Ct. at 2229–30, 60 L.Ed.2d at 797–98. An irrational presumption could not do so.

In *Sandstrom*, a criminal case involving the issue of intent, Justice Brennan, for a unanimous Court, held that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates the due process clause of the Fourteenth Amendment. "[A] reasonable jury could well have interpreted the presumption as 'conclusive' . . . . Alternatively, the jury may have interpreted the instruction as a direction to find intent . . . unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence—thus effectively shifting the burden of persuasion on the element of intent. . . . Such a requirement shifts not only the burden of production, but also the ultimate burden of persuasion on the issue of intent." —— U.S. at —— – ——, 99 S.Ct. at 2456, 61 L.Ed.2d at 46–47.[4] Justice Rehnquist, in an

---

4. While *Ulster County* states that a weak mandatory presumption may be analyzed like a

permissive presumption if introduction of "any" evidence or some other extremely low

opinion in which Chief Justice Burger joined, doubted whether "this particular jury was so attentively attuned to the instructions of the trial court that it divined the difference recognized by lawyers between 'infer' and 'presume'". ——, 99 S.Ct. 2461, 61 L.Ed.2d 53. (Rehnquist, J., concurring.) Nevertheless, he "defer[red] to the judgment of the Court that this difference in meaning may have been critical in its effect on the jury". *Id.*

## II

■ Ascertaining what type of presumption the Louisiana negligent homicide statute establishes is not an easy task. The statute was enacted to overrule the Louisiana Supreme Court's decision in *State v. Wilbanks*, La. S.Ct. 1929, 168 La. 861, 123 So. 600, holding that violation of a penal statute prohibiting driving without lights at night constituted "culpable and criminal negligence". *Id.* at 601.[5] At that time Louisiana had no negligent homicide statute. The legislature passed one the following year. It provides:

> Negligent homicide is the killing of a human being by criminal negligence.

> The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.

> Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years.

LSA–R.S. 14:32.

In *State v. Nix*, La. S.Ct. 1947, 211 La. 865, 31 So.2d 1, *cert. denied*, 1947, 332 U.S. 791, 68 S.Ct. 100, 92 L.Ed. 373, the Louisiana Supreme Court recognized that the intent of this statute was to overrule the

*Wilbanks* rule that "violation of an ordinance or a statute is within and of itself criminal and culpable negligence". *Id.* at 3. The Court interpreted the statute as establishing a rebuttable presumption:

> The use of the word "only" in Article 32 indicates that the presumption is merely a rebuttable one and not conclusive, and has the sole effect of shifting the burden of producing evidence during the progress of the trial. . . . This statute does not change the rule as to the presumption of innocence or place any affirmative burden upon the accused, for, upon the conclusion of the trial and after all evidence has been adduced, the State must have proved beyond a reasonable doubt that the defendant was guilty of the crime charged, that is, that the defendant was criminally negligent and that such negligence was the cause of the killing.

*Id. accord, id.* at 3. The Court's statements that the statute creates a rebuttable presumption and that it shifts the burden of production of evidence suggests that a factfinder must find for the prosecution on the issue involved unless the defendant produces evidence to the contrary. If that is the meaning of the statute, it would be subject to a challenge based on *Sandstrom*. The Louisiana Court did, however, state that no affirmative burden was placed on the accused and referred to the continued validity of the reasonable doubt standard.

The Louisiana Supreme Court's recent decision in *Hammontree* clarifies the construction to be placed on the statute. The Court noted that the *Nix* Court said that the law established a rebuttable presumption and that "the State would still be required to prove beyond a reasonable doubt

amount of evidence fulfills the defendant's burden of production, *Sandstrom* appears to suggest that the two types can be analyzed similarly so long as the defendant does not have to come forward with more than "some" evidence. ——–——, 99 S.Ct. at 2456–57, 61 L.Ed.2d at 47–48.

5. The court observed that: "There seems to be no conflict in the decisions of the courts of the various states that, where a person is violating some statute and his manner is negligent and careless, he is guilty of manslaughter, if the death of some other person is the result." 123 So. at 600.

that the negligent act was the cause of the homicide". 363 So.2d at 1372. The Court recognized that *Nix* did not answer Hammontree's contention that "the existence of such a presumption infringes on his constitutional right to remain silent and to require the State to prove his guilt beyond a reasonable doubt even when defendant puts on no evidence to rebut the presumption". *Id.* In short, the *Nix* Court did not determine whether a jury could validly find that the presumption did not necessarily prove the prosecution's contention of criminal negligence beyond a reasonable doubt even if a defendant introduced no evidence. If a jury could do so, the presumption shifts no burden and is merely permissive. The Court in *Hammontree* then discussed the meaning of the criminal presumption statute:

> The better interpretation of 'presumptive evidence' in R.S. 14:32 is that it creates *no legal presumption*, but means that the violation of a statute related to the cause of the accident will *justify the inference* that defendant committed a criminally negligent act. . . . Reasonably careful men are expected to obey safety laws, and it is within the province of the legislature to permit the inference that one who violates a safety law and thereby injures another is guilty of criminal negligence; and if it is proved beyond a reasonable doubt that the criminal negligence was the cause of death, the perpetrator may be guilty of criminal homicide.

*Id.*[6] (*emphasis added*). The Court's statement that the law *creates no presumption* and the repeated references to an "*inference*" are dispositive of the meaning of the term "presumptive evidence".

The Louisiana Supreme Court's treatment of other presumptions provides fur-

ther evidence that it does not consider the negligent homicide presumption to be mandatory. Two years before *Hammontree* it cast serious doubt on the validity of many Louisiana statutory presumptions. *State v. Searle*, La. S.Ct. 1976, 339 So.2d 1194, declared unconstitutional a judicially created presumption that "a person in the unexplained possession of property recently stolen at the time of a burglary is presumed to have committed the burglary". *Id.* at 1202. The presumption was overturned because of two Supreme Court rulings: *In re Winship*, 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, holding that the prosecution must prove every element of a crime beyond a reasonable doubt, and *Mullaney v. Wilbur*, 1975, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, holding that a state could not shift the burden of ultimate persuasion on an essential element to the defendant. The judicially created burglary presumption had grown out of Louisiana's presumption statute, providing that:

> A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.

6. A comment comes to the same conclusion about the negligent homicide presumption:

[It] indicates neither an inference of fact nor a shift in the burden of production. It simply attempts to alleviate the effect that the violations might have upon the verdict. The legislature has attempted to lessen the weight of

such evidence, and has not committed a constitutional violation in doing so. For the sake of clarity and consistency, however, the word "presumption" should be deleted.

Comment, *Presumptions in the Criminal Law of Louisiana*, 52 Tul.L.Rev. 793, 813 (1978).

LSA–R.S. 15:432. Reasoning from *Winship* and *Mullaney*, the Louisiana Supreme Court held that "to sustain the use of a presumption to prove the crime charged or an essential element thereof it is incumbent upon the prosecution to demonstrate that the presumed fact must beyond a reasonable doubt flow from the proven fact on which it is made to depend". *Id.* at 1205. The Court suggested that the legislature reexamine all criminal presumptions. *Id.* at 1203; *accord, State v. Coleman,* La. S.Ct. 1978, 358 So.2d 289, 292.

Apparently the Court considered the *Hammontree* presumption to be different in kind from the presumptions found in LSA–R.S. 14:32. Indeed, the legislature's use of the word "presumption" in LSA–R.S. 15:432 and "presumptive evidence" in LSA–R.S. 14:32 also indicate that the framers intended the statutes to have different effects. In sum, Louisiana case law characterizing the term "presumptive evidence" as an "inference", and the legislature's use of the word "only" to qualify the term "presumptive evidence", lead us to conclude that the Louisiana negligent homicide statute did not shift any constitutional burden from the prosecution to the defendant.

### III

■ Although we interpret the Louisiana negligent homicide presumption to be permissive, in effect only an inference, we must still determine whether in this case the statute was erroneously interpreted in the instructions.[7] Both *Ulster County* and *Sandstrom* emphasize the importance of the trial judge's instructions in ascertaining the type of presumption. *Ulster County* mandates: "In deciding what type of inference or presumption is involved in a case, the jury instructions will generally be controlling, although their interpretation may require recourse to the statute involved and the cases decided under it." —— U.S. at ——, 99 S.Ct. at 2225 n.16, 60 L.Ed.2d at 792 n.16. In agreement, *Sandstrom* states:

"[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction". —— U.S. at ——, 99 S.Ct. at 2454, 61 L.Ed.2d at 45.

The trial judge gave the following instruction about the statutory presumption:

The particular statute that defines "the crime of negligent homicide also provides that" " 'the violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.' " This has reference to criminal negligence, which is an essential element of the crime charged. The use of the word "only" in this part of the law means that such presumption is merely a rebuttable one and not conclusive. The presumption does not deprive the accused of the right of showing evidence that he was free from criminal negligence even though he has violated a statute or ordinance. This presumption of law does not change the rule heretofore mentioned as to the presumption of innocence that attends the accused throughout the trial, for upon its conclusion and after all of the evidence has been presented, in order to convict, the State must have proved to your satisfaction and beyond a reasonable doubt that the defendant was criminally negligent, under the definition of criminal negligence given to you in this charge, and that such negligence was the cause of the killing.

The Louisiana Supreme Court decided that the instruction was not improper. We disagree, and hold that the instruction violates due process as interpreted by the Supreme Court in *Ulster County* and *Sandstrom,* both of which were decided after the Louisiana Supreme Court's *Hammontree* decision.

On these instructions, a reasonable juror could conclude, as in *Sandstrom,* that the criminal negligence statute created a mandatory presumption requiring the defendant to produce a "quantum of proof which may

---

7. As the Supreme Court said in *Sandstrom,* "The Supreme Court of Montana is, of course, the final authority on the legal weight to be given a presumption under Montana law, but it is not the final authority on the interpretation which a jury could have given the instruction." at ——, 99 S.Ct. at 2455, 61 L.Ed.2d at 46.

well have been considerably greater than 'some evidence'—thus effectively shifting the burden of persuasion". 61 L.Ed.2d at 47–48. The trial judge did not state that the presumption placed no "affirmative burden upon the accused". A juror could conclude that evidence of a statutory violation shifted the burden of persuasion to the defendant on the issue of criminal negligence. This would of course violate due process unless the presumption proved criminal negligence beyond a reasonable doubt.

Two statutory violations were charged. The first was driving at an excessive speed. The judge charged:

> Louisiana Revised Statute 32:64 provides that no person shall drive a motor vehicle at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of the street or highway, and the condition of the weather, regardless of the maximum speed that may otherwise be established for vehicles on the said street or highway, and the violation thereof is declared unlawful.

We cannot say that a speeding violation proves criminal negligence beyond a reasonable doubt. To drive faster than is reasonable or prudent may show negligence, but it does not necessarily demonstrate criminal negligence. Louisiana's definition of criminal negligence suggests that it encompasses negligence far beyond ordinary negligence: "Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA–R.S. 14:12.

The second statutory violation—driving while intoxicated—presents a much harder case. Here the judge charged:

> You are charged that it is unlawful to operate a vehicle while intoxicated. The law defines that offense as follows:
>
> "Operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel, or other means of conveyance by a person under the influence of alcoholic beverages, narcotic drugs, central nervous system stimulants, hallucinogenic drugs or barbiturates."

Under the influence of alcoholic beverages means that a person operating the vehicle does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages, thus rendering him incapable of operating a vehicle in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions.

Driving in that condition could indicate criminal negligence beyond a reasonable doubt. Whether it does so we need not decide because of our conclusion that the first statutory violation does not meet the Supreme Court's due process standards. The jury could have relied on a violation of the speeding statute in determining criminal negligence. The Court held in *Ulster County* that it is "irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction". —— U.S. at ——, 99 S.Ct. at 2226, 60 L.Ed.2d at 794.

This reasoning answers the state's contention that even if the presumption is unconstitutional any error is harmless because other evidence justified a conviction. Here, as in *United Brotherhood of Carpenters v. United States,* 1947, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973, "[a] failure to charge correctly is not harmless, since the verdict might have resulted from the incorrect instruction". 330 U.S. at 409, 67 S.Ct. at 783, 91 L.Ed. at 985.

Because Hammontree's jury may have interpreted the trial judge's instruction as constituting a burden-shifting presumption that would have deprived the defendant of his right to the due process of law, we hold that the instruction given in this case is unconstitutional.

## IV

The federal district court ordered the defendant discharged from custody unless the

state appealed. No mention was made of any retrial by the state. During oral argument before this Court the state's attorney said that the state would want to retry him in the event that this Court upheld the district court's grant of habeas corpus. The defendant's attorney stated that he would not object to retrial unless a new trial would violate double jeopardy principles. We suggest that the state be given a reasonable time, say ninety days, within which to retry the petitioner;[8] otherwise, it must permanently discharge him from custody. "This is consistent with the statutory provision that the court shall 'dispose of the matter as law and justice require.'" C. Wright, A. Miller, & E. Cooper, 17 Federal Practice and Procedure § 4268 at 714–15; *citing* 28 U.S.C. § 2243. We remand to the district court to amend its order to carry out our directions.

The case is REMANDED.

---

8. Any evidence concerning double jeopardy problems can be introduced at a new state court trial.