333 So.2d 296 (1976)
Arthur CARPENTER
v.
HARTFORD ACCIDENT AND INDEMNITY CO.
No. 10709.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
*297 J. Glenn Dupree, Baton Rouge, for appellant.
Edward W. Gray, Baton Rouge, for appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Plaintiff Arthur Carpenter (Appellant) appeals from judgment rejecting his demand for damages for personal injuries, related medical expense, property damage, loss of wages and loss of business profits sustained and incurred as the result of an intersectional collision between an automobile owned and operated by Appellant and a police car on an emergency mission. Hartford Accident & Indemnity Company (Appellee), insurer of the police vehicle involved, is the sole defendant herein. The trial court found the driver of the police car negligent but dismissed Appellant's suit upon finding Appellant contributorily negligent. We reverse and render judgment in favor of Appellant.
The accident occurred at approximately 11:30 P.M. on January 4, 1975, at the intersection of Eden Street and Labauve Avenue in Plaquemine, Louisiana. Just before the accident happened, Jessel M. Ourso, Jr., Deputy Sheriff, Iberville Parish, accompanied by Deputies Orian Goliath and Keith Hanks, was driving a Sheriff's Department vehicle on routine patrol. While proceeding southerly on Highway 1, *298 just outside the municipal limits of Plaquemine, Ourso received a radio call to check on a fire reportedly in progress at the Plaquemine Elementary School. Ourso immediately reversed his direction, activated all emergency equipment on his vehicle and proceeded northerly on Highway 1 toward the city at an admitted speed of approximately 60 miles per hour. Upon reaching Fort Street in the city limits, which street runs east and west, and at which point Highway 1 becomes Eden Street, Ourso continued northerly on Eden Street, notwithstanding that Eden Street is a two lane major thoroughfare and is one-way south. The described intersection of Eden Street, Fort Street and Highway 1 is controlled by a semaphore traffic signal. At Fort Street a motorist traveling northerly on Highway 1 is required to either turn right and follow Highway 1 a block east to Church Street and then turn left in a northerly direction, or turn left at Fort and proceed one block west to Railroad Avenue and turn right to continue north. However, Ourso, in his haste to reach the fire, continued north on Eden Street and traveled the wrong way on this major thoroughfare of the city. Ourso concedes that he knew he was traveling against traffic on a one way street and that other routes were available, but he felt the route chosen was the most direct to the school.
The police unit was equipped with a small dashboard-mounted bubble top rotating red light, two flashing red lights approximately five inches in diameter mounted behind the radiator grill, and a siren which made a loud continuous noise audible for a distance of approximately one-quarter mile. Ourso and Hanks testified that all the mentioned equipment was in operation from the moment Ourso started toward the fire continuously to the instant of impact.
Labauve Avenue, which runs east and west, is situated one or two blocks north of Fort Street. It is conceded that the intersection of Eden and Labauve is well lighted. Appellant's residence is located at the northeast corner of the intersection. A drug store is situated at the northwest corner. On the southwest corner is a service station and on the southeast corner is a large residence on the grounds of which are some rather large shrubs which obstruct the view to the left (south) of a driver proceeding westerly on Labauve. Eden is the favored thoroughfare. A stop sign on Labauve requires drivers on that street to yield to traffic on Eden.
Ourso and Hanks testified that when their police car was approximately one block south of Labauve, appellant's car was seen stopped at the intersection with its lights off. Appellant then pulled slowly into the intersection, whereupon Ourso applied his brakes forcefully. The police vehicle slid sideways and struck Appellant's vehicle on its left side.
Appellant testified that he heard the fire signal, which indicated a fire at the school, and that he was en route to check on his washateria situated one block from the school. His car had been parked on Labauve Avenue where it was customarily left. He drove up to the stop sign with his lights on. He looked to his right (north) to check for southbound traffic on Eden and, observing no vehicles approaching from that direction, proceeded to cross the intersection. He stated that he did not hear a siren and did not see the patrol car with its lights flashing until it was approximately one-half block away, at which time he was already in the intersection.
La.R.S. 32:24 prescribes the privileges and duties of the driver of an emergency vehicle as follows:
"§ 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, *299 but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
The degree of care required of the driver of other vehicles, upon the approach of an emergency vehicle, is provided for by La.R.S. 32:125 which states:
"§ 125. Procedure on approach of an authorized emergency vehicle
A. Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."
Although La.R.S. 32:24(B)(3) and (4) authorize the driver of an emergency vehicle to exceed speed limits and to disregard regulations governing direction of traffic flow, the statute also expressly provides that such a driver is not relieved of the duty to drive with due regard for the safety of others and further stipulates that he is responsible for any injury or damage resulting from his breach of this duty. Bergeron v. Port Allen Mortuary, Inc., La.App., 178 So.2d 442; Fant v. Zurich Insurance Company, La.App., 160 So.2d 443; Sullivan v. Hartford Accident & Indemnity Company, La.App., 155 So.2d 432; Calvert Fire Ins. Co. v. Hall Funeral Home, La.App., 68 So.2d 626.
The trial court found Deputy Ourso negligent in operating his vehicle in a careless manner. In this finding we concur. Driving a vehicle 60 miles per hour the wrong way on a major two lane city street constitutes reckless disregard for the safety of others. We think it clear that Deputy Ourso breached his duty of care in this instance and that said breach renders him liable for the consequences of such action, unless Appellant is barred from recovery because of Appellant's own contributory negligence.
We find that Appellant obeyed all ordinary traffic regulations pertinent under the circumstances. He stopped at the intersection in obedience to the stop sign. After stopping he looked to his right (north), the only direction from which traffic could lawfully approach the crossing. When he *300 observed no traffic coming from that direction he proceeded into the intersection. While the question of whether Appellant's vehicle had its lights on is a matter of dispute, we think it immaterial under the circumstances whether Appellant's lights were off or on. The intersection was well lighted; both Ourso and Hanks stated that they saw Appellant's vehicle stopped without lights before Appellant proceeded into the intersection.
We know of no authority setting forth the duty of a motorist crossing a favored one-way thoroughfare to look for traffic approaching illegally from the wrong direction. We are of the view that a motorist has no duty to observe for illegally approaching vehicles in such a situation. We deem the position of such a motorist analogous to that of a driver entering an intersection on a favorable traffic signal. He has the right to assume that other motorists will obey the law and not travel the wrong way on a one-way street. See Bourgeois v. Francois, 245 La. 875, 161 So.2d 750; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Powell v. Allstate Insurance Company, La.App., 233 So.2d 38; Moore v. Traders & General Insurance Company, La.App., 227 So.2d 174.
Appellant's alleged contributory negligence is predicated upon his duty to yield the right of way to emergency vehicles as prescribed by La.R.S. 32:125. However, such duty arises only when the motorist observes or hears, or under the circumstances should have observed or heard the audible and/or visible warnings of the emergency vehicle. The burden of proving Appellant's alleged contributory negligence rests upon Appellee. Fant v. Zurich Insurance Company, above. To bar Appellant's recovery, Appellee must establish that Appellant was aware or should have been aware of Ourso's approach.
Granting Ourso's and Hanks's testimony that the siren on their vehicle could be heard at a distance of four or five blocks, nevertheless, Appellant testified that he did not hear the warning. Also conceding the siren was sufficient warning in most instances, there are other circumstances to be considered in determining whether it should have been heard by Appellant. The police car was approaching at a very rapid rate of speed thus affording a short period of time for a motorist to hear and react to the signal. It is not shown whether the fire signal was still sounding at the time of the accident. The accident occurred in January and at night. It is reasonable to assume that Appellant may have had his windows up and the heater on his vehicle operating if the car was so equipped. It is also possible that Appellant had a radio in his car and that the instrument was playing. The record is silent as to all these factors. As we noted above, the burden or proving contributory negligence rests upon defendant. We find defendant has not met this burden and that the trial court manifestly erred in deciding otherwise.
In urging affirmation, Appellee relies heavily upon Calvert Fire Ins. Company v. Hall Funeral Home, above. We find the cited authority readily distinguishable on its facts. In the quoted case the motorist involved was shown to have been driving with his windows down and his radio turned off. It was also shown there were no noises or other disturbances which impaired the motorist's hearing and that disinterested witnesses in the vicinity of the intersection heard the siren. No such showing was made in this instance.
Appellant's vehicle, valued at $750.00 was totally demolished in the accident. The car had a salvage value of $125.00. Appellant incurred expenses of $25.00 for towing his vehicle and medical expense in the aggregate of $131.80 in treatment of injuries sustained in the accident. Deducting the salvage value of Appellant's vehicle, we find Appellant entitled to $781.80 for these losses and expenses.
*301 Following the accident, Appellant was taken to the hospital where his injuries were diagnosed as traumatic myositis of the left lateral thigh (translation, inflammation of the left lateral thigh muscle). Appellant was released that night and went home. Because of chest pains which occurred two or three days after the accident, Appellant returned to the hospital for x-rays of his ribs, which proved negative. Appellant was never hospitalized. Upon medical advice, Appellant missed one week's work, resulting in a net wage loss of $139.00, which Appellant is entitled to recover.
Appellant claims $1,500.00 for loss of profits from his washateria business over a three month period during which Appellant was without a car and was therefore unable to travel to Baton Rouge to obtain spare part for washers and dryers which needed repair following the accident. Appellant testified that he used commercial machines in his business and repair parts were not locally obtainable. In support of this claim, Appellant produced records showing an average reduction of $500.00 monthly in the income from his business for the three months following the accident. However, Appellant was informed nine days after the accident that his vehicle could not be repaired. Despite this knowledge he made no effort to obtain another car until three months later; neither did he rent a vehicle.
It is well settled that an injured party must make reasonable efforts to mitigate and minimize his damages. Carimi v. Saia, La.App., 301 So.2d 895; Interiors, Inc. v. Ryder Truck Lines, Inc., La.App., 269 So.2d 496; Perniciaro v. Travelers Insurance Company, La.App., 227 So.2d 778. Since Appellant made no effort to minimize his business loss, he may not recover for that portion thereof which he may have prevented by reasonable diligence.
However, we find the record establishes that Appellant did suffer some business loss, the precise amount of which cannot be measured in dollars and cents. Under the circumstances, we invoke the well established rule that in such cases courts may award recovery which is reasonable upon the record. Melancon v. I. M.C. Drilling Mud, La.App., 282 So.2d 532; Henry Waters Truck & Tractor Co., Inc. v. Relan, La.App., 277 So.2d 463. In this instance we find that an award of $150.00 for loss of business profits will do substantial justice between the parties.
Appellant testified that he suffered pain in his left thigh for three to four weeks following the accident. Dr. John A. Freeman, who treated Appellant on the night of the accident, testified that the pain attested by Appellant would be consistent with Appellant's thigh injury. Dr. Freeman also stated that Appellant did not complain of chest pains. The record is clear, however, that Appellant did return to the hospital for chest x-rays. We are of the view that an award of $1,000.00 will adequately compensate Appellant for his personal injuries, pain and suffering.
It is ordered, adjudged and decreed that the judgment of the trial court rejecting plaintiff's demands against defendant herein be and the same is hereby reversed and set aside, and judgment rendered herein in favor of plaintiff, Arthur Carpenter, and against defendant Hartford Accident & Indemnity Company, in the sum of $2,070.80, with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
Reversed and rendered.