McCLENDON, J.
Appellants seek review of a trial court judgment finding an officer grossly negligent in causing a motor vehicle accident when responding to an emergency. For the reasons that follow, we amend the judgment to assess fault comparatively and affirm the judgment as amended.
FACTS AND PROCEDURAL HISTORY
This matter arises out of a motor vehicle crash that occurred on March 15, 2014 at around 11:30 p.m. on Airline Highway in East Baton Rouge Parish. Plaintiff, Karonda Washington, was a passenger in a 2003 Mazda Tribute being operated by her daughter, Shankeyshia Jones.[1] Ms. Jones was traveling northbound in the right hand lane of Airline Highway, approaching its intersection with Jefferson Highway.
At about the same time, Brad Manuel and Tyler Comeaux, both deputies with the East Baton Rouge Parish Sheriff's Office, were traveling northbound in the left hand lane of Airline Highway, some unspecified distance behind Ms. Jones' vehicle. The two deputies were in separate police cruisers with their emergency lights and sirens on responding to a Code III call. A Code III call generally requires officers to move to the scene as quickly as possible with lights and sirens engaged. The officers were responding to a call regarding "a disturbance with a weapon ... with an individual inside of a home with a gun" along with screaming being heard in the background.
At some point, Ms. Jones moved her vehicle into the left hand lane to make a left turn onto Jefferson Highway. Deputy Manuel stopped his police cruiser behind Ms. Jones' vehicle. Deputy Manuel, in an attempt to have Ms. Jones move her vehicle *11 so that he could pass, changed the tone on his siren multiple times. After Ms. Jones had made sufficient room to allow Deputy Manuel to pass, Deputy Comeaux's cruiser rear-ended Deputy Manuel's cruiser and pushed it to the right. Thereafter, Deputy Comeaux's cruiser rear-ended Ms. Jones' vehicle. Ms. Washington was injured in the accident.
On June 10, 2014, Ms. Washington filed suit against Deputy Comeaux; Sid Gautreaux in his capacity as the East Baton Rouge Parish Sheriff; the Sheriff's insurer, Atlantic Specialty Insurance Company (improperly identified as OneBeacon America Insurance Company in the petition); Ms. Jones; and Ms. Jones' insurer, GoAuto Insurance Company. Ms. Washington alleged that the accident was caused by the fault of Mr. Comeaux and/or Ms. Jones and sought recovery for injuries sustained in the accident.[2]
Ms. Jones and GoAuto Insurance Company filed an answer, alleging that Deputy Comeaux was responsible for the accident, or alternatively, that fault should be apportioned between the two defendant drivers.
Deputy Comeaux, the Sheriff, and Atlantic Specialty Insurance Company (sometimes referred to collectively as appellants) filed an answer, asserting that Ms. Jones was liable for the accident for, among other things, failing to comply with a motorist's duties under LSA-R.S. 32:125 upon approach of an emergency vehicle.
Following a trial on the merits, the trial court found the appellants solely liable for the accident, reasoning as follows:
The court finds that the defendant, Sheriff Comeaux, ... was grossly negligent in the manner in which he operated his police unit on the night of the accident. From his own testimony he stated that he, and I'm paraphrasing, that he was blinded by the blue lights, either from his car or from another sheriff's deputy's car that was in front of him that did not allow him to see the braking of the vehicles in front of him. He was operating the vehicle based off the testimony, in the neighborhood going well over ninety something miles-per-hour. And the road condition of the night of the accident, it was wet. And so the court finds that he was grossly negligent in operating the vehicle at such a high rate of speed without being able to clearly see what was in front of him. He was not able to stop his vehicle from running in the back of his - another sheriff deputy's vehicle that he knocked off the road and then propelled into the vehicle in which the plaintiff was riding in.
No reference was made by the trial court regarding the position of Ms. Jones' vehicle or Ms. Jones' failure to stay in the right lane of travel as the emergency vehicles approached. On November 6, 2017, the trial court signed a judgment in accord with its ruling in open court, holding the appellants solely liable for the accident and awarding damages in favor of Ms. Washington.
In their appeal, appellants assign the following as error:
1. The trial court erred in finding that Plaintiff met her burden of proof that Deputy Comeaux was grossly negligent.
2. Alternatively, the trial court erred in finding that Deputy Comeaux was that sole cause of the subject accident *12 and failing to assign any comparative fault to Shankeyshia Jones.
DISCUSSION
A reviewing court cannot disturb the factual findings of a trial court absent abuse of discretion or manifest error. Rosell v. ESCO, 549 So.2d 840 (La. 1989). To reverse the trial court's factual findings, the appellate court must find from the record that no reasonable factual basis exists for the findings and must determine that the record establishes the findings as clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). Thus, the inquiry is whether the factual findings are reasonable, not whether the trier of fact was right or wrong. Id. If, in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
Appellants assert that Deputy Comeaux, because he was responding to a Code III emergency with lights and sirens activated, was immune from liability because the plaintiffs failed to show that he acted with reckless disregard or was grossly negligent. Specifically, LSA-R.S. 32:24 provides immunity from liability to drivers of emergency vehicles, under specific circumstances as follows:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.
By setting the standard as reckless disregard, "[t]he legislature has obviously recognized the high social value and premium placed on protection and rescue efforts." Lenard v. Dilley, 01-1522 (La. 1/15/02), 805 So.2d 175, 180.[3]
*13 "Reckless disregard" connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Id. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." Id. (quoting State v. Vinzant, 200 La. 301, 315, 7 So.2d 917, 922 (La. 1942) ).
Appellants contend that Deputy Comeaux's actions fall squarely within the parameters of the conduct the legislature aimed to protect by enacting LSA-R.S. 32:24. Appellants also assert that the trial court was manifestly erroneous in finding that the road was wet, that Deputy Comeaux exceeded ninety miles-per-hour,[4] and that Deputy Comeaux could not clearly see the road or anything else in front of or around his patrol unit. Appellants conclude that Deputy Comeaux bore no fault for the accident.
However, following our review of the record, we find no manifest error in the trial court finding that Deputy Comeaux was grossly negligent. While appellants assert that Deputy Comeaux's speed prior to the accident was not established with certainty, the record establishes that Deputy Comeaux was traveling well above the posted speed limit of 55 m.p.h. at the time of the accident. Specifically, both deputies acknowledged that they were traveling above the posted speed limit. Moreover, both deputies also testified that prior to the crash there was a distance between the two deputies' vehicles because Deputy Comeaux had stopped at a prior intersection to allow Deputy Manuel to proceed through a red light. Deputy Comeaux indicated that Deputy Manuel was traveling at a high rate of speed and Deputy Comeaux testified that he "was moving to catch back up with him."
Additionally, although appellants assert that the trial court manifestly erred in its conclusion that Deputy Comeaux proceeded without being able to clearly see what was in front of him, appellants concede that the record, at a minimum, establishes that the blue emergency lights on Deputy Manuel's vehicle reduced Deputy Comeaux's visibility and reaction time. Specifically, at trial, in response to plaintiffs' counsel's questions, Deputy Comeaux testified:
Q. And did you see anything indicating that Deputy Manuel driving in front of you was stopping or attempting to stop?
A. Yeah - Yes, sir. Eventually I did. He was slowed to stop. And as I was closing on him, I recognized that he was stopped and applied my brakes accordingly.
Q. And what did you notice? Brake lights?
A. Yes, sir. It is kind of hard to explain unless you've seen it personally, but when you are running lights and sirens *14 at night, the blue light is very bright. And it washes out. It is almost like a sea of blue. The only thing that actually shows up is the singular brake light that is in the back window. So that's eventually what I saw.
* * *
Q. Did you see Deputy Manuel travel at a high rate of speed and come to a complete stop?
A. Yes, sir. But at the same point in time, he had a clear windshield in front of him and he was able to see the other vehicle move in front of him and was able to respond to that accordingly. I was not able to see that, so all I could do was respond to what I saw.
* * *
Q. [Why could] everybody else [stop] but you?
A. I mean, once again, Deputy Manuel was able to directly respond to the vehicle that was in front of him that pulled over in front of him. He was able to see that and recognize that. I'm coming up behind him. He's got blue lights on. It takes longer and it's harder to see those red brake lights coming through that blue light.
Q. So to make sure I understand you correctly, you said the blue lights blind you?
A. No, sir, I didn't say that. I said it is harder to see the red light through it. It is. It's like a blue blob driving down the road sometimes.
We recognize that the trial court erred in its factual finding that the road was wet, given that it did not start raining until after the accident. Even so, considering the entirety of the record and the fact that Ms. Jones was in the left lane for a period of time prior to the accident, we cannot conclude that the trial court manifestly erred in finding that Deputy Comeaux was grossly negligent and bore some responsibility for the accident. Based on the record, the trial court could have found that Deputy Comeaux was operating his vehicle at a high rate of speed even though he was aware that his vision was impaired by the blue lights on Deputy Manuel's vehicle.
Appellants urge that Ms. Jones, even if she is not solely at fault, is comparatively negligent because she failed to yield her vehicle to the police cruisers, and she failed to stay on the right-hand side of the highway as required by LSA-R.S. 32:125A. Louisiana Revised Statutes 32:125A, regarding the procedure a motorist should apply on approach of an authorized emergency vehicle, provides:
Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
Appellants also assert that Ms. Jones violated LSA-R.S. 32:79(1), which requires a motorist on a two lane roadway to drive "entirely within a single lane" and not move into another lane "until the driver has first ascertained that such movement can be made with safety." Appellants aver that because Ms. Jones planned to turn left at the next intersection, she moved into the left lane of travel, rather than yielding to the oncoming emergency vehicles. Because she failed to adhere to these statutory responsibilities, appellants assert *15 that Ms. Jones bears some responsibility for the accident.
The trier of fact is owed some deference in allocation of fault since the finding of percentages of fault is a factual determination. Duncan v. Kansas City Southern Railway Co., 00-0066 (La. 10/30/00), 773 So.2d 670, 680, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001). Thus, a trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. See Stobart , 617 So.2d at 882. Allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and any allocation by the fact finder within that range cannot be clearly wrong. Foley v. Entergy Louisiana, Inc., 06-0983 (La. 11/29/06), 946 So.2d 144, 166. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Clement v. Frey, 95-1119, 95-1163 (La. 1/16/96), 666 So.2d 607, 611.
In determining the percentages of fault, the trier of fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985). These same factors guide the appellate court's evaluation of the respective fault allocations. See Clement, 666 So.2d at 611.
The duty to yield the right of way to an emergency vehicle arises only when the motorist observes or hears, or under the circumstances should have observed or heard, the audible and visual warnings of such a vehicle. Carpenter v. Hartford Acc. & Indem. Co., 333 So.2d 296, 300 (La.App. 1 Cir. 1976) and Pope v. Prunty, 37,395 (La.App. 2 Cir. 8/20/03), 852 So.2d 1213, 1221, writ denied, 03-2496 (La. 11/26/03), 860 So.2d 1137. The burden of proving Ms. Jones' negligence rests on the appellants. See Carpenter, 333 So.2d at 300 and Pope, 852 So.2d at 1221.
We recognize that Ms. Jones' testimony when questioned by counsel regarding whether she was in the right lane or left lane when she first heard the police sirens and/or saw the emergency lights was somewhat equivocal. However, the trial court, seeking clarification of Ms. Jones' testimony, questioned her as follows:
Q. You said there were cars on your right hand side?
A. Well, we were coming -- I was at the right, but I had got to the left. So there were cars back to the right, yeah.
Q. You got to the right - you got to the left after you saw the lights of the police?
A. Yeah. So there were cars to the right.
Q. Make sure I'm clear. So you're in the right hand lane?
A. Yeah.
Q. You saw the police lights?
A. I just couldn't see how far away they were.
Q. And then you got in the left lane?
A. Yes.
*16 * * *
Q. And then once you got into the left lane, then there were cars coming in the right lane?
A. Yes.
Q. Where you couldn't get back over?
A. Right.
Accordingly, Ms. Jones, when directly questioned by the trial court regarding her lane position, stated that she was traveling in the right lane when she first heard and/or saw the emergency lights of the police vehicles.
By moving to the left lane in front of the approaching emergency vehicles, Ms. Jones violated her statutory duty owed under LSA-R.S. 32:125A. More specifically, the statute requires drivers of vehicles to yield the right of way immediately to the emergency vehicle without thought of their own destination and even if doing so causes them inconvenience. See Riggs v. State, 488 So.2d 443, 445 (La.App. 3 Cir. 1986) ("Mrs. Riggs should have pulled to the right when she saw [the emergency] vehicle, even though she would have ended up past her driveway.") See also Jones v. Thomas, 27,140 (La.App. 2 Cir. 8/23/95), 660 So.2d 86, 90-91, writ denied, 95-2351 (La. 12/8/95), 664 So.2d 426 (Motorist must abide by duties in LSA-R.S. 32:125, even though doing so would cause motorist "[t]o miss her turn at [the] intersection [which] would have caused her to go out of her way to get home.") Ms. Jones knowingly moved from the safety of the right lane into the left lane directly into the path of the approaching emergency vehicles. In light of Ms. Jones' violation of her statutory duty, we conclude that the trial court manifestly erred in failing to assign any fault to Ms. Jones. In considering the factors set forth in Watson and cognizant that we can only raise the fault percentage to the lowest percentage the trial court could have assessed Ms. Jones, we assess Ms. Jones with 25% fault.[5]
CONCLUSION
For the foregoing reasons, we reverse the November 6, 2017 judgment of the trial court to the extent it failed to assess Shankeyshia Jones with comparative fault, and we amend the judgment to assess Ms. Jones with 25% fault and appellants with 75% fault. The judgment is affirmed in all other respects. Costs of this appeal in the amount of $3,728.00 are assessed 50% to appellants, Sid J. Gautreaux, III, in his capacity as Sheriff of East Baton Rouge Parish, Deputy Tyler Comeaux, and Atlantic Specialty Insurance Company, and 50% to appellees, GoAuto Insurance Company and Shankeyshia Jones.
JUDGMENT AMENDED IN PART AND AFFIRMED AS AMENDED.

Four children were also guest passengers in Ms. Jones' vehicle.

Suit was also filed on behalf of two of the minors in the vehicle. Their claims are not at issue in this appeal.

The Louisiana Supreme Court explained in Lenard that LSA-R.S. 32:24(D) sets forth two standards of care for an emergency vehicle driver, depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections (A), (B) and (C) of the statute, will an emergency vehicle driver be held liable only for his or her actions which constitute reckless disregard for the safety of others. Lenard, 805 So.2d at 180. On the other hand, if the emergency vehicle driver's conduct does not fit subsections (A), (B) and (C) of the statute, such driver's actions will be gauged by a standard of "due care." Id. The parties do not dispute that the "reckless disregard" standard applies here.

Appellants assert that a handwritten note in the Accident Review Board report stated "96+ according to care download," but there was no witness that testified at trial that could authenticate that information nor was there any indication at what point in time the alleged speed would have been recorded.

After Ms. Jones moved to the left lane, it is undisputed that she was unable to move back to the right lane because of traffic. Our conclusion might be different had Ms. Jones been in the left lane when she first became aware of the police cruisers. See Wiley v. Sutphin, 108 So.2d 256, 260 (La.App. 2 Cir. 1958) ("The law does not exact the doing of the impossible, or that, in attempting the impossible, a person be exposed to greater danger.")